# SUPREME COURT

#### OF THE

## STATE OF MISSOURI,

### OCTOBER TERM, 1852, AT ST. LOUIS.

#### [CONTINUED FROM VOL. XVI.]

~~~~~~~~~~~~~~~~~

### LYDIA AND THOMAS RECTOR, Plaintiffs in Error, *vs.* WAUGH, Defendant in Error.

1. The remedy by the ancient warranty real of the common law never had any practical existence in the United States; and the principles which were applied to it, having their origin in the feudal system, are not applicable to the covenant of warranty used in our system of conveyancing.
2. The common law implied no warranty, when partition was made between joint tenants and tenants in common. The doctrine, which makes an outstanding title bought in by one joint tenant or tenant in common, enure to the benefit of his co-tenants, is one of equitable cognizance, and courts of equity mould and apply it, so as to do justice among the tenants.
3. At common law, conveyances between tenants in common cannot operate by way of release, but must contain words of perpetuity to pass a fee. If one tenant in common conveys to another by a deed with warranty containing no such words, the warranty becomes extinct by the death of the grantee, and any after acquired title of the grantor does not, by virtue of it, enure to the heirs of the grantee.

#### *Error to Marion Circuit Court.*

The opinion of the court contains a sufficient statement of the facts.

2—VOL. XVII.

*Glover & Campbell* and *Buckner*, for plaintiffs in error.

1. The deeds of partition read in evidence were in the proper legal form to consummate a full and perfect partition between joint tenants or tenants in common. 4 Kent, 6, 7, 8, 364, 369. 4 M. & S. 178. 10 J. R. 456. 18 ib. 79. Chitty's Blackstone, book 2, page 324. A mere release in such cases being the proper form to pass a fee simple estate, the warranty thereto annexed is a warranty of such an estate. 2. Those deeds, therefore, forever estopped the grantors from denying that the title passed by them. It was a universal principle at common law, that a conveyance, no matter of what form, with general warranty, concluded and estopped the grantor to the extent of the estate conveyed. 2 Thomas' Coke, top page, 347 (1 Am. from last Lond. ed.) notes (1) and (2). Ib. 288, 290, 293. Shep. Touch. 181–2. 3 Taunt. 90. 4 M. & S. 178. 1 Salk. 276. Strange, 818. 3 T. R. 441. 2 Saund. 38 *a* note 4. 2 Rep. part 3, 58, Lincoln college case. Ib. part 4, 121, Bustard's case. 2 Rep. part 3, pp. 59 and 63. 1 ib. 67, Archer's case. Ib. 136, Chudleigh's case. Chitty's Black. book 2, 301–2–3–4. The same doctrine has been recognized in this country. 6 Watts, 63. 2 S. & R. 507. 14 Mass. 243. 10 Met. 192. 17 Mass. 249. 3 Pick. 52. 24 Pick. 324. 15 Mass. 307. 7 Greenl. 97. 8 Ohio, 226. 11 ib. 235. 3 ib. 116. 2 Humph. 386. 1 Sum. 263. 1 Peck, 24. 3 Leigh, 376. 9 Cranch, 52. 4 Dana, 251, 129. 14 Johns. 224. 4 Bibb, 436. 12 Johns. 207. 11 ib. 91. 4 Dev. & Bat. 54. 5 Pike, 693. 7 Conn. 214. 9 Wheat. 455. 10 Mo. 434. 29 Me. Rep. 183. 30 ib. 539. 3. The power of attorney from Thompson Bird to Bates was sufficient to authorize the latter to insert covenants of warranty in the deeds. 3 T. R. top p. 414. 15 East, 45. 21 Wend. 279. 2 Camp. 555. 1 J. J. Marsh. 291. 1 Ala. (new series,) 446. 1 Wash. C. C. R. 455. 15 Verm. 160. 2 McLean, 549. 6 Hill, 337. 8 Mass. 181. 4. It is objected that the deeds were not formally excuted in the name of Thompson Bird as grantor; that the signature should have

been "Thompson Bird, by Moses D. Bates, agent." The answer to this is, that the "proprietors" are stated to be the granting parties. Bird was shown to have been one of those proprietors. *Id certum est quod potest certum reddi.* 8 J. R. 385. 2 N. H. 310. Story on Agency, 183. 10 N. H. 470. 7 ib. 475. 3 Dana, 237. 5. Even if there was any defect in the power or its execution, the deeds of partition were subsequently ratified by Thompson Bird by implication. Express ratification is not necessary. 1 Liv. on Agency, 44–5. 2 Greenl. 359. 2 Bos. & P. 301. 12 Wend. 525. 4 Pet. 83. 4 Binney, 231. 8 Cow. 586. 6. It is said that, as all parties to the partition lost the title which they divided among themselves, the mutual obligations which they held neutralized and destroyed each other, so that neither had a cause of action against the other. No such principle is known to the law; but even if there were, the warranty does not derive its *conclusive* power from any cause of action it is supposed to give, but from its effect to seal the lips of the maker to aver any thing against it. 7 Mass. 21, 291. 8 Ohio, 226. 15 ib. 409. 4 Bibb, 436. 9 Cranch, 52. 9 Wheat. 455. 4 Dev. & Bat. 54. 2 Humph. 383. 7. The amount of consideration is wholly immaterial. 8 Mass. 200. 8. Even if it were conceded that Bates had no power to insert the express covenant of warranty, every partition implies and has annexed to it a warranty in law. 2 Thomas' Coke (same ed. above cited) top pp. 527, 298, 300. 1 ib. 819, (K.) note 68, 838–9 and note T. 1 Shep. Touch. 185. 3 ib. 467. 11 Pick. 311. 3 Dana, 321. 3 John. 331. 4 Bibb, 355. 2 Sumn. 522. 5 Johns. 388. 3 Greenl. 214. As between tenants in common, a purchase of an outstanding title by one enures in equity to all : an equity in this case entitles the plaintiffs to recover. See R. C. 1845, tit. Ejectment, section 13. 11 Mo. 437. An implied warranty at common law created an estoppel. 1 Touch. 203. Ib. 183, 40, 46–7. 2 Coke, top p. 288, note A. 3 Dana, 321. 3 John. 331. 3 Harr. (Del.) Rep. 103. 4 Kent, 260. Archer's case, 1

Rep. 67. 9. It is well settled that an estoppel will sustain an ejectment. 4 Kent, 98. 11 Ohio, 478. 2 Dev. 177. 10. The defendant being a mere trespasser cannot set up an outstanding title in Bird, Bates and Rector, when they would not be allowed to set it up themselves.

*Abiel Leonard*, for defendant in error. The plaintiffs rest their title upon two propositions. 1. That a conveyance of land with warranty has the effect at common law of passing all the after acquired estate of the grantor. 2. That upon this principle, the deed of 1819, from Bird and others to the plaintiff's ancestor, passed to him all their after acquired title to the lot in controversy. The defendant controverts both propositions.

I. As to the *first*, it is admitted that it is sustained by the decisions in Massachusetts and several other states, and these decisions are expressly put upon the old common law doctrine of rebutter incident to a real warranty. *Somes* v. *Skinner*, 3 Pick. Rep. 58. *Pike* v. *Galvin*, 29 Me. Rep. 183, where the American cases are all collected. It is denied, however, that this Massachusetts doctrine is part of the English common law, and the two following observations are submitted in support of this position: 1. The personal covenant of warranty used in the American system of conveyancing is not identical with the warranty real of the common law, and there is, therefore, no legal propriety in imputing to the former the effect that the ancient common law imputed to the latter. 2. If, however, the personal warranty is to be considered identical in its operation with the real warranty of the ancient law, yet the effect of passing an after acquired estate in all cases was never imputed by that law to the real warranty. The effect of a real warranty was to oblige the warrantor to defend the estate to which it was annexed; and it was used either for defence or redress. For defence, when the attack came from the direction of the grantor; and this was called a rebutter and sometimes an estoppel. For redress, when the attack came from a stranger, either on voucher, or warranty of charter to recover

a recompense in land of equal value.   2 Black. Com. 300–303.
Two circumstances, however, were essential to enable the war-
ranty to operate by way of rebutter, or in other words, to con-
stitute the warranty a bar : 1. The estate to be barred must
have been divested or turned to a right at the time or before
the warranty was made.   1 Shep. Touch. 186–188.   *Lord
Seymour's* case, 10 Rep. 96.   2 Thomas' Coke, 537.   *Roll
v. Osborn*, Hobart's Rep. 20.   2. The estate to be protected by
the rebutter or estoppel must have been a continuing estate at
the time it sought the protection of the warranty.   Same author-
ities cited above.   2 Greenleaf's Cruise, tit. 32, chap. 25,
secs. 12–14.   Cases will illustrate these rules.   In the old
law, there were estates without rights, and rights without es-
tates.   When a throne is usurped, there is a sovereign *de facto*,
and a king without a kingdom.   When a freeholder was turned
out of his freehold by disseisin, and his place usurped by a
stranger, a wrongful freehold, an estate *de facto* was created,
and the lawful estate was displaced or turned to a right.   The
case put in Coke, 265, *a*, in the very passage usually cited in
support of the new doctrine, is of a father and son.   The
father is disseised, and the son releases to the disseisor with
warranty ; then the father dies ; the land descends to the son,
and this after acquired estate is barred by the warranty, or in
other words, is transmitted from the son to his grantee by the
previous conveyance with warranty.   Here the estate barred is
turned to a right by the disseisin at the time of the warranty,
and the estate protected by the warranty is in being when the
right to the land descends upon the son.   If either had been
otherwise, the warranty would not have barred, or in modern
language, the after acquired estate would not have passed.
The case from the Year Books, 17 Edw. III., cited in 31 vol.
Law Lib. 458, and Seymour's case, 10 Rep. 96, prove both
these propositions.   The case of *Hutchinson v. Prestwidge*,
4 M. & S. does not conflict with any thing here said.   There
the *lease and release* of the tenant in tail produced a discon-
tinuance of the estate tail, and turning that estate to a right

(Co. Litt. 330, *a*,) made it capable of being rebutted. *Doe* v. *Oliver*, 2 Smith's Lead. Cases, note of Am. editor, in which the cases upon this subject are collected. The case of *Right* v. *Bucknell* is reported in 2 B. & A. 278 (22 Eng. Com. Law Rep. 73.) If this view of the law be correct, it is manifest that the present warranty, giving it all the effect of a real warranty of the ancient law, cannot have the effect to pass the after acquired rights of any of the grantors in the partition deed of 1819, for the want of the very two conditions essential to give a warranty that effect at common law. 1. There was no estate either rightful or wrongful in Stephen Rector at the time the partition deed was made, and none was created by that deed. 2. The estate to be barred, or rather the estate to be transmitted, that is, the estate of Abraham Bird, the father, acquired by T. Bird, M. D. Bates and W. V. Rector, after the execution of the partition deed of 1819, was not displaced or turned to a right, when that deed was executed.

II. Assuming the Massachusetts doctrine to be the rule of decision in this state, several reasons exist to exclude from its operation the deed of 1819.

*First.* The warranty in that deed is not within the reason or equity of the rule. *Comstock* v. *Smith*, 13 Pick. Rep. 119. *Jackson* v. *Bradford*, 4 Wend. 620. *Blanchard* v. *Brooks*, 12 Pick. 47. *Allen* v. *Sayward*, 5 Greenl. Rep. 230. The distinction is between a *sale* and a *partition*. In the first case, natural justice obliges the seller to guaranty the title; in the other, the same justice imposes upon the parties the implied limited warranty of the common law upon a partition among parceners, binding each part owner to the extent of his interest in the common title and no further. Upon a partition among coparceners with this limited warranty, if a stranger come with a paramount adverse title, and take the whole property, these warranties become extinct by mutually compensating each other; while if it take only part, the share, for instance, assigned to one, the other part owners are liable, not for the whole, but each for his due proportion of the loss.

Under the new rule, however, if it is to be applied to a partition deed, when this adverse title extends to the whole property, and descends upon one of the part owners (as in the present case,) the warranty, instead of being extinguished by the extinction of the common title, or even limited in its operation, immediately transmits the new title without compensation to the former co-tenants and throws the whole loss upon that part owner who has acquired the new title. The principles of natural justice, which, it is said, called this rule into existence, forbid its application to such cases. *Bustard's* case, 4 Rep. 120. Co. Lit. 173, *b*, 174, *a*. 2 Greenleaf's Cruise, tit. 32, chap. 6, sec. 16, chap. 25, secs. 21, 22. The three partition deeds of 1819, may be considered as one assurance, and construed accordingly. *Jackson* v. *McKenny*, 3 Wend. 233. No consideration was given for the warranty, and the intention being manifest, the court ought to limit its meaning, notwithstanding the words are general, to that which was the subject of the partition. *Sumner* v. *Williams*, 8 Mass. Rep. 214. *Allen* v. *Holton*, 20 Pick. 463. *Moore* v. *Magrath*, Cowp. Rep. 9.

*Second.* The warranty is of no legal validity, for the reason that the covenantee (S. Rice) is also one of the covenantors; and being void as a covenant, is inoperative to pass the after acquired title. Nor are there any proper words of perpetuity in the warranty, so as to enable it to enure to the heirs of the grantee. 1 Inst. 383 *b*. 2 Greenleaf's Cruise, tit. 32, chap. 25, sec. 13.

*Third.* If, however, the present warranty must be considered as embraced by the rule, the deed of 1819 cannot have any other or further effect than it would have had, if the estate subsequently acquired had been vested in Bates, Bird and W. V. Rector, when the deed was executed. *Patterson's lessee* v. *Pease*, 5 Ohio Rep. 192. If that had been the case, the deed could only have taken effect as a deed of bargain and sale, or as a common law release. Under the old law, the partition deed, as an original common law conveyance, like a

common law exchange, must have been executed by the entry of the parties, and there is no pretence of any thing of that kind here. 2. Greenleaf's Cruise, tit. 32, chap. 6, secs. 14 and 25. As a deed of bargain and sale, it is inoperative to the plaintiff for two reasons : 1. No consideration is expressed in the deed and none was proved. 2 Inst. 672. 4 Kent, 495. *Jackson* v. *Fish*, 10 J. R. 456. 2 Greenleaf's Cruise, tit. 32, chap. 9, secs. 3, 4, 19 and 22. 2. It vested only a life estate in Stephen Rector for want of proper words of perpetuity, and of course, his heirs take nothing under the deed. 2 Black. 324. 1 Thomas' Coke, 390. Co. Lit. 96. 2 Greenleaf's Cruise, tit. 32, chap. 22, secs. 6, 7 and 8. Ib. chap. 6, secs. 23, 24, 34. As a common law release, it is inoperative for the following reasons : 1. There was no joint tenancy between the grantee, Stephen Rector, and his grantors, Bird, Bates and W. V. Rector. Stephen Rector had no estate in the land, and the deed, therefore, is of no validity as a common law release, for want of such an estate in him as qualified him to take a release. 2 Greenleaf's Cruise, tit. 32, chap. 6, secs. 18–39. 2. If Stephen Rector had any estate, it was a tenancy in common, and it is old law, that the estate of one tenant in common cannot pass by a common law release to his co-tenant. And if other conveyances are used, the same words of perpetuity are necessary as in other cases. 2 Greenleaf's Cruise, tit. 32, chap. 6, sec. 25.

*Fourth.* The subsequently acquired title which is alleged to have passed to the plaintiff's ancestor, and which is now sought to be recovered, vested in only two of the grantors in that deed, (Bates and Bird)—the conveyance from Bird's heirs to Rector and from W. V. Rector to Bird and Bates, constituting only one assurance—and this warranty binds neither of these grantors. It does not bind Bird for want of power in Bates, the attorney, to make a conveyance with warranty, and also, because the conveyance is in the name of the attorney, and not of the principal. Nor does it bind Bates, for want of apt words in the deed to oblige Bates.

*Richmond* and *Lakenan*, for same.

*Glover*, in reply to Leonard. The defendant's counsel admits that perhaps every court in the Union has ruled against him the main point he makes, which is, that a deed of bargain and sale with general warranty will not estop the grantor and his assigns; but he avers that this is the result of judicial ignorance, and attempts to show that the English law was different. He admits that warranties barred and estopped or passed the after acquired title in England, but undertakes to show that these were ancient, not modern warranties, and concludes that the modern warranty is no bar. The English courts have never made this discovery. They continue to hold that a warranty is a bar, and passes an after acquired title. 1 Shep. Touch. 181, note 2.   2 Coke, top page, 289, note A. 4 M. & S. 178.   3 T. R. 13.   When the law is well settled, it must stand, though the reason of it should not be obvious. He says no warranty barred any estate not displaced or turned to a right prior to its descent or fall, and cites Seymour's case, where the warranty was only of a life estate. This case was not one in which the warrantor was to be barred, but a third person, a privy in estate. It is therefore not in point. The effect of the warranty upon privies in estate or in blood, reversioners, remaindermen, issue in tail or heirs at law, was highly artificial and unreasonable, and has nothing to do with this case. There is no foundation in fact for the assertion that, in England warranties were only annexed to " wrongful estates" or " estates commencing by disseisin." It is known that warranties, commencing by disseisin, were absolutely void, both at common law, and by statutes in affirmance thereof. The grantor they bound, not as warranties, but on account of the fraud which one could not aver against himself. But heirs, tenants in tail, reversioners, remaindermen, assignees, &c., were not bound by them. 1 Touch. 182, 196. The language attributed by the learned counsel to Lord Coke, that the word " heirs" is necessary in releases between tenants in common by

way of partition is not to be found in his books. What he says is this : " If partition be made between parceners of land in fee simple, and for owelty of partition one grant a rent to the other, the word " heirs" is not required to pass a fee." 1 Coke, top p. 580. He does omit to say the same rule applies to tenants in common. But he adds, " *eadem ratio idem jus.*" From the authorities, Kent is satisfied that tenants in common may convey to each other by release, without the word " heirs." 4 Kent, 6, 7, 8. The co-proprietors could have enforced contribution from the plaintiffs, for the purchase of the outstanding title, if they paid more for it than the first consideration. 11 Mo. Rep. 435. This was equity. But they wanted to seize on *all* the rights of the plaintiffs.

SCOTT, Judge, delivered the opinion of the court.

This was an action of ejectment, begun in March, 1848, to recover possession of a lot of ground in the city of Hannibal, in this state. The plaintiffs in error, who were also plaintiffs below, based their right of recovery upon the following deed : " This list and instrument of writing is to make known to all whom it may concern, that, after the sales of lots in the town of Hannibal, (of a part thirty-two squares, which were laid off,) the sales of which have been examined by each of the proprietors, this day an equal division of the remaining unsold lots of said thirty-two squares or blocks was equally made, according to the different interests in said town property, and we, the said proprietors, do hereby relinquish to Stephen Rector, (one of the proprietors,) the lots marked and numbered in the columns to the left," (here follows a list of the lots conveyed by the deed, including lot number seven, in block number thirty-one, the lot in controversy,) " each lot to be sixty-five and a half feet front, by one hundred and forty-two feet back. To have and to hold the same forever, and we furthermore warrant and defend said lots against the claim or claims of all and every person whatsoever. Should there be surveyed out at any future time more lots in the town tract

(first located by Thompson Bird, Elias Rector, Thos. C. Rector and Laban Glasscock,) the same will vest as an undivided property belonging to the present proprietors.

" In testimony whereof, and of the whole of the foregoing agreement, we, the proprietors of Hannibal, have hereunto set our hands and seals the day and date above written.

| | |
|---|---|
| " R. GENTRY, | (seal.) |
| " THOS. C. RECTOR, | (seal.) |
| " WM. V. RECTOR, | (seal.) |
| " STEPHEN RECTOR, | (seal.) |
| " M. D. BATES, | (seal.) |
| " For TH'N. BIRD." | |

This deed was acknowledged by the parties, in St. Louis county, before a justice of the peace, on the 17th of April, 1819, but was never recorded. In columns on the left hand margin of the paper on which the deed was written, there was a list containing a description of the lots by number, and the various blocks in which they were situated. The plaintiffs were the widow and child of Stephen Rector, named in the foregoing deed as the grantee. The lot in controversy is parcel of a tract of land owned by Abram Bird, sr., who authorized his son, Thompson Bird, by power of attorney, to dispose of it. A patent for the tract of land containing 640 acres, was issued to A. Bird, in 1824. He died in 1821, leaving a wife and five children, of whom Thompson Bird was one. Under his power of attorney, Thompson Bird conveyed one half the tract of land to Elias Rector, and one eighth to M. D. Bates. Elias Rector afterwards conveyed his interest to the above named persons, R. Gentry, Thos. C. Rector, Wm. V. Rector and Stephen Rector. Under the direction of these last named individuals and Thompson Bird, M. D. Bates laid off the town of Hannibal, and the proprietors made a public sale of lots in 1819, and afterwards, in the same year, a division of the remaining lots took place among the proprietors, who executed mutual deeds of partition with covenants of warranty. The deed above recited is one of the several deeds which

were executed in consummation of the agreement among the several proprietors. It was afterwards discovered, that the power of attorney, under which Thompson Bird acted, was defective, and the representatives of Elias Rector, in a suit, recovered back the purchase money for the land which Bird had conveyed to him, and which he had conveyed to the above named proprietors, R. Gentry, T. C. Rector, Wm. V. Rector and Stephen Rector. The title under which the town was laid off and the partition among the proprietors was made, thus having failed, Thompson Bird, M. D. Bates and Wm. V. Rector subsequently acquired a new title to the land on which the town was laid off; and this suit is brought on the warranty contained in the deed above recited to Stephen Rector, on the ground that the subsequently acquired title passed by estoppel to Stephen Rector and those claiming under him, as against Thompson Bird, M. D. Bates and W. V. Rector and those claiming under them.

On the case made, the court below instructed the jury that the plaintiffs were not entitled to recover.

It was contended for the plaintiffs that those claiming under Bird, Bates and W. V. Rector, are estopped by the warranty contained in their deed of partition to Stephen Rector, from denying the right to the premises in controversy of Stephen Rector and those claiming under him, and that the title subsequently acquired by Bird, Bates and W. V. Rector, enured, by virtue of the warranty, to Stephen Rector and his heirs and assigns, or that the estoppel created by the warranty operated to pass the after acquired estate, and will, therefore, sustain an ejectment.

For the defendant, it was maintained that the personal covenant of warranty, used in our system of conveyancing, is not identical with the warranty real of the common law, the one being essentially different from the other : that if, however, the personal covenant is to be considered identical in its operation with the real warranty of the ancient law, yet, the effect of passing an after acquired estate, in all cases, was never

imputed by that law to the real warranty; that the effect of a real warranty was, to oblige the warrantor to defend the estate to which it was annexed, and was used either for defence or redress. For defence, by way of rebutter or estoppel against the grantor, and for redress, by way of voucher or *warrantia chartae*, when the warrantee was sued for the land warranted ; that to make a warranty operate by way of rebutter, or to constitute a bar, the estate to be barred must have been divested or turned to a right, at the time or before the warranty was made, and must have been a continuing estate, at the time it claimed the protection of the warranty.

1. It is the received opinion of the profession, that the remedy by the ancient warranty, never had any practical existence in the United States. Chancellor Kent says that the ancient remedy on the warranty is inadequate and inexpedient, and has become entirely obsolete. 4 Kent, 472. The principles maintained by the plaintiffs prevail in many states where modes of alienation exist similar to our own, and although they may not harmonize with some rules of the ancient common law, whose utility and importance are not so readily perceived as formerly, yet they seem now supported by too great weight of authority, and have too long prevailed, to be disregarded with safety to titles. No question of this kind has arisen in our courts, independent of our statute, and it has been suggested, that we are at liberty to take a course that will harmonize with the ancient law. Although the question may not have arisen here, yet we know that the profession in this state is mostly composed of those who have been educated in other states, and in the absence of opposing statutes, they have naturally enough conceived that our courts would take the law as it is understood in our sister states. This consideration should restrain us from entering on any new course in relation to this subject. The strong views presented by the counsel for the defendant are supported by a great weight of authority, but the reasoning on which they are founded has been insensibly undermined, and principles which stood out in

bold relief when the feudal policy was the idol of the law, have gradually lost their force. Our statute, allowing the conveyance of lands whilst in the adverse possession of another, has overturned many of the rules of the ancient law of alienations. Smith's Leading Cases, with American Notes, 459, 460-1-2, 3. *Pike* v. *Galvin*, 29 Maine Rep. 183. As the opinion of the court will turn on another point in the case, without going into an examination of the authorities in support of the views advanced by the plaintiffs to sustain their action on the estoppel created by the warranty in the deed of partition, we will proceed to state the grounds on which our judgment is based.

2. It cannot escape observation, that the doctrine of estoppel, as applied in this case, is very harsh in its operation. A number of proprietors of a town, supposing that they have a title to the land on which the town is laid off, make an equal partition of the lots amongst themselves, and mutually convey with warranty. The entire title to the land which is the subject of partition afterwards fails. If the matter ended here, it would not be maintained that any one of the proprietors had a cause of action against the others, as what he recovered on his warranty, he, in turn, would be compelled to refund to him from whom he had recovered on the warranty he had given. The different warranties would compensate each other, and it would be useless to sue, as each party in the end would be in the situation in which he was before suit was brought. The parties would be all even, and there would be no obligation, in law or morality, resting on one to indemnify another. After the failure of the first title, one or more of the proprietors acquire a new and distinct title to the land on which the town was laid off, and a former proprietor, who has neither contributed, nor offered to contribute any thing towards the acquisition of the new title, lays claim to all the lots conveyed to him by the deed of partition. The common law implied no warranty when partition was made between joint tenants and tenants in common. Indeed, by the common law, partition was not compellable among them. The warranty was only implied on par-

tition among coparceners, and only extended to the land which was the subject of the partition. The doctrine which makes an outstanding title, bought in by one joint tenant or tenant in common, enure to the benefit of his co-tenants, it seems, is one of equitable cognizance, and courts of equity would mould and apply it so as to do justice among the tenants. *Van Horne* v. *Fonda,* 5 J. C. R. 388.

The fact that Waugh appears on the record as a trespasser does not affect the merits of this question. This suit is maintained and defended, with a view to settle the rights of the different claimants to the lot in controversy, and he must be regarded as the representative of those who purchased the new title, and a decision against him in the case, as presented, will bar their rights. Nor do we consider it as affected by the fact, that Bates and Bird, in their subsequent conveyances, indemnified themselves against the claim of those with whom they had formerly made partition. The principle on which the action is sought to be maintained is unaffected by these circumstances, is one of dry and technical law, and when applied to the facts of this case has nothing to commend it. We feel no reluctance in answering a technical action with a technical objection.

3. In the deed on which this action is founded, there are no words of perpetuity used in conveying the estate to Stephen Rector. According to the law in force at that day, the words employed only conveyed a life estate, and the duration of the warranty is only co-extensive with the estate to which it was annexed. The warranty, then, was extinct on the death of Stephen Rector. In 4 Kent, 5, it is said, the word "heirs" is necessary at common law to create, by deed, an estate in fee simple. Further on, he says, that this rule does not apply to a partition between joint tenants, coparceners and tenants in common, nor to releases of right to land, by way of discharging or passing the right, by one joint tenant or coparcener to another. In taking a distinct interest in this separate parcel of the land, the releasee takes the like estate in quantity,

which he had before in common. This is a question in which the matter of intent has nothing to do. The law has appropriated a certain word, by which an estate in fee simple can only be created by deed. If that word is omitted, however clear and manifest the intent may be, an estate in fee will not pass. It is conceded that, as between joint tenants and coparceners, a fee may pass by a release without the word heirs, but it is apprehended that one tenant in common cannot release to another. A deed intended as a release between tenants in common, although it cannot have that effect, may yet operate as some other kind of conveyance ; but to make it effectual as such to pass a fee, proper words of limitation must be employed. Cruise says, one tenant in common cannot release to his companion, because they have distinct freeholds, but they must pass their estates by feoffment. Vol. 4, tit. 32, chap. 6, sec. 25. So he says, if one coparcener or joint tenant releases all his right to another, it will pass a fee without the word heirs. Ib. chap. 21, sec. 7. Lomax says that partition between tenants in common, who having several and distinct freeholds, might have conveyed to each other by feoffment, might, at common law, have been effected by livery of seizin. The adjustment between them in severalty of the estate, derived to them in common by distinct titles, could only be effectuated by a conveyance, accompanied by that notoriety indispensable to all conveyances at common law. 2 vol. 96. So again, one tenant in common cannot release to his companion, because they have distinct freeholds ; but they must pass their estates by feoffment. Ib. 98. Preston on Abstracts says, when several persons are tenants in common, the title to each share is to be carried on, precisely in the same manner as if the title to that share was a title to a distinct farm. 3 vol. 48. Hilliard says, joint tenants and coparceners may release to each other. In a release of this kind, a fee will pass without words of limitation. The releasee is deemed in law to hold, not by the release, but by the original limitation to all the parties. The release is not an alienation, but a mere dis-

charge of the claims of one to the other. Hence a fee arises out of the original conveyance. Tenants in common, having distinct freeholds, cannot release to each other. 2 vol. 300, 301. Bacon says, if there be two joint tenants, and one release to the other, this passeth a fee without the word " heirs," because it refers to the whole fee, which they jointly took and are possessed of by force of the first conveyance. But tenants in common cannot release to each other, for a release supposeth the party to have the thing in demand ; but tenants in common have several distinct freeholds, which they cannot transfer, otherwise than as persons who are sole seised. 4 vol. 455. The books may be traced to the earliest periods, and it will be found, that no author has maintained that one tenant in common can convey to another, in any other way or by a conveyance whose operation is different from those used by feoffors, between whom no such relationship exists. It follows from this that, however conveyances between tenants in common may operate, and they cannot operate by way of release, they must contain words of perpetuity to pass a fee.

Other exceptions were taken to the deed on which the plaintiffs rely for a recovery, but it is not deemed necessary to give any opinion respecting them, as the judgment will be affirmed for the reason already given. The other Judges concur.