## HENDRICKS v. MUSGROVE et al., Appellants.

### Division One, July 1, 1904.

1. **MARRIED WOMAN'S DEED: Release of Dower Only.** A deed by a husband and wife of the wife's land, although a general warranty, will not be effectual to convey the land, if it purports to be the deed of the husband and wife, and she by her acknowledgment as his wife relinquishes only her dower.

2. ———: **After-Acquired Property.** A deed by a married woman made prior to the passage of the Married Woman's Act of 1899 (and possibly since) does not convey her after-acquired interest in the land.

3. **COTENANT: Possession.** The possession of one tenant in common is the possession of all the cotenants.

4. ———: **Adverse Possession.** In order for one tenant in common to acquire title by limitation against another tenant in common, he must do some act towards his cotenant that will amount to a disseizin or a repudiation or a denial of the right of the cotenant and such as will show an intention to hold adversely to him, and such act must be totally irreconcilable with a recognition of the rights of the cotenant.

5. ———: ———: **Question for Jury.** Where there is no conflict in the evidence as to the manner, character or extent of the possession of one cotenant, it is not a matter for the jury to determine whether his possession was so adverse to another cotenant as to debar that cotenant from recovering in ejectment. The court should decide the point.

6. ———: ———: ———: **Homestead in 1873: Case Stated.** A homesteader died in 1873, and his wife and five children supposing that she was entitled to only a lifetime interest in the land, brought a partition suit and a homestead was set off to her in a part of it, and the balance to the five children. Thereafter, at the solicitation of the widow, one of the sons bought the interests of three of the heirs, including that of plaintiff's mother, but her deed being defective he did not acquire her interest. But supposing he owned a four-fifths interest in the estate, subject to his mother's life estate, he put up a new house, barn and other improvements, of the total value of

$3,000, mortgaged the land, asserting himself to be the owner of a four-fifths interest therein, and then afterwards acquired the interest of the other brother, and thereafter mortgaged it, again describing his interest as the whole fee, and recorded the mortgage promptly, and for over fourteen years he remained in the open, notorious, exclusive and continuous possession, claiming it at all times as his against the entire world, and honestly believed it to be his, as did his neighbors generally, and never knew that the son of the sister from whom he had acquired the defective deed claimed any interest therein until this suit was brought, more than three years after the son had reached his majority. *Held*, that as against that cotenant, the son, he has the title by adverse possession, and the court should have so instructed the jury.

7. ———: **Adverse Possession: Recording Mortgage.** From the day that a cotenant records a mortgage in which he describes himself as the owner of the entire fee, the statute of limitations begins to run against his cotenant.

Appeal from Scotland Circuit Court.—*Hon. E. R. Mc-Kee,* Judge.

REVERSED.

*Smoot, Boyd & Smoot* for appellants.

(1) Defendants' instruction in the nature of a demurrer to the evidence should have been given. Peck v. Lockridge, 97 Mo. 549; Campbell v. Gas Co., 84 Mo. 374. When defendant Gilbert's deed from plaintiff's mother was put of record it was an assertion of record then and there that he owned the land from thence forward. Gilbert was not a tenant in common with plaintiff at any time. He had purchased the interests of all his cotenants and was holding adversely for twenty years. Huston v. Huston, 139 Mo. 235. It is not necessary to prove distinct verbal acts. Dunlap v. Griffith, 146 Mo. 283. The ouster occurred in this case, if a cotenancy existed, as against the mother of plaintiff when the deed was delivered and recorded. Whitaker v. Whitaker, 157 Mo. 353; Peck v. Lockridge, 97 Mo.

549. In this case upon the undisputed evidence the ouster occurred more than ten years before suit was brought by plaintiff. The defendant Gilbert's object in purchasing the interest of his cotenants was to procure their interests, and it destroyed the unity of possession, whether the deeds had that effect or not. Peck v. Lockridge, supra. The taking and recording of the deeds was of themselves an act of ouster. 13 Am. and Eng. Ency. of Law (1 Ed.), 1114; Campbell v. Gas Co., 84 Mo. 374. The uncontradicted testimony shows that Gilbert had open, notorious, adverse possession of the premises in question for nearly twenty years before the bringing of this suit and if he was a tenant in common at any time he had ousted his cotenant. Warfield v. Lindell, 38 Mo. 561. (2) Instruction 9 given for plaintiff was not only misleading but erroneous, and when applied to the facts in this case was not the law. Boyce v. Railroad, 168 Mo. 583; Warfield v. Lindell, supra; Peck v. Lockridge, supra. The improvements shown in this cause, the collection of rents and profits for a long series of years, and the appropriation of it by Gilbert were acts of ouster of themselves. Huston v. Huston, 139 Mo. 236. Upon the evidence in this case a jury might well be warranted in finding from the improvements and collection of rents that an ouster had actually occurred; notwithstanding this instruction says these facts may all be found by the jury and yet such acts of themselves do not constitute an ouster. The rule is universal that the collection of the rents and profits for a long series of years, and the making of valuable and lasting improvements, when done under a claim of right, as is shown in this case, of themselves constitute an act of ouster. Lapeyre v. Paul, 47 Mo. 586; 1 Cyc. 1074; Oglesby v. Hollister, 9 Am. St. Rep. 177.

*Mudd & Wagner, J. M. Jayne* and *Lewis Myers* for respondent.

(1) The instructions given on the part of both the appellants and respondent under the evidence, and the position taken by the parties at the trial, fairly present the case, and announce correct principles of law as applied to the facts of the particular case under consideration. The appellate court will not, therefore, reverse the trial court on the account of its failure to give other and further instructions. Warfield v. Lindell, 38 Mo. 561; Shotwell v. Gordon, 121 Mo. 485. (2) The rule is well settled in this State that the adverse possession of a cotenant must be a public one, one totally irreconcilable with the cotenancy of another. Long v. McDow, 87 Mo. 197. (3) The court is bound to submit the question of adverse possession to the jury under proper instructions. It is out of the province of the court to assume such adverse possession. Whitaker v. Whitaker, 157 Mo. 342. (4) The mortgage of the whole premises by a cotenant is not *per se* an ouster. Wilson v. Collishaw, 13 Pa. St. 276.

MARSHALL, J.—This is an action of ejectment for an undivided one-fifth of the north half of the northeast quarter of the southeast quarter and the west half of the northeast quarter, and the northeast quarter of the northeast quarter of section 36, township 65, range 11 west, in Scotland county. The petition is in the usual form, and the ouster is laid as of the first day of July, 1892. The answer admits the possession by the defendants; pleads estoppel and title by limitation. There was a verdict and judgment for the plaintiff, and defendants appealed.

The facts in this case are all undisputed, and are as follows: Ludwell Musgrove owned the land here involved, together with other lands. He died intestate in 1873, leaving his widow, Mary A., and five children, to-wit, Mary F. Hendricks, the mother of the plaintiff, but the plaintiff was not born for some two years thereafter, Julia, Alexine Woods, William E., and the

defendant, Gilbert, and possibly John T. Musgrove, who, however, appears, to have died. The widow, Mary A., believing that she was entitled only to dower and homestead rights, instituted on May 9, 1879, a partition suit against the six children. This resulted in a decree in partition whereby, the land in controversy was set apart to the widow as a homestead of the value of $1,500.

Thereafter, at the solicitation of the widow, and all parties believing that she had a life estate only in the property, the defendant Gilbert, who then lived in Colorado, purchased from his sister, Mary F. Hendricks, all of her divided and undivided interest in the land in controversy, for the price and sum of eight hundred dollars, by a warranty deed, dated February 23, 1880, and recorded on May 18, 1880. Moved thereto by like inducement, the defendant Gilbert purchased the interest of his sister, Mrs. Alexine Woods, on April 21, 1880, and of his sister Julia, on August 26, 1880. These deeds were also duly recorded. Thereupon having, as they all supposed, acquired the title by inheritance or by purchase to four-fifths of the fee, subject to his mother's life estate of homestead, the defendant Gilbert moved back to Missouri, and went to live upon the premises with his mother. Shortly afterwards, about 1880 or 1881, the plaintiff's mother died, and the plaintiff continued to live in Colorado. In 1883, the widow died and the defendant Gilbert entered into the possession and sole enjoyment of the premises.

On September 6, 1886, he executed a deed of trust to Erwin Dewey, upon his interest in the land, which was recited in the deed to be a four-fifths interest, that is, the interest of Gilbert, of Mary F. Hendricks, plaintiff's mother, of Alexine Woods and of Julia Musgrove, and which was the whole estate except the one-fifth then owned by his brother William E. Musgrove.

On March 10, 1887, he purchased the interest of his brother William E., in the premises, and having, as he supposed, then acquired by inheritance or purchase

the absolute fee to the premises, he executed, on December 6, 1887, another deed of trust upon the land to Henry H. Fugate, which purported to cover the whole fee. All of these conveyances and deeds of trust were duly and promptly placed of record in the proper office in the county in which the land lies.

After the defendant Gilbert had thus acquired the whole fee, as he supposed, and after the death of his mother, which terminated her life estate, as they all regarded it, he made many and valuable improvements on the land, and otherwise cleared and improved it at an aggregate expense of some three thousand dollars. He occupied, used, enjoyed and remained in the open, exclusive, notorious and continuous possession of the premises and has continued so to do. He claimed to hold the whole estate against the whole world. His neighbors and the community regarded and treated it as his. No one else claimed any interest in it prior to the institution of this suit. On the fifteenth of June, 1896, he conveyed the land to E. R. Bartlett, and on the twentieth of December, 1898, Bartlett conveyed it to Zora M. Musgrove, the wife of the defendant Gilbert, and he claims that these conveyances were intended to settle the land upon his wife, while the plaintiff claims that about that time he began making inquiries about his interest in the land and that the defendant, Gilbert, made the conveyances for the purpose of thereby furnishing a foundation for a claim of actual ouster of his cotenant, the plaintiff.

At the close of the whole case the defendants demurred to the evidence. The court overruled the demurrer. The court submitted the case to the jury upon instructions which proceeded upon the theory that the widow, Mary A. Musgrove, plaintiff's grandmother and Gilbert's mother, owned the fee, and not merely a life estate or homestead right in the land, and that at her death the land descended in fee to her children, and that

the plaintiff became seized of an undivided one-fifth thereof in right of his deceased mother; that Gilbert became a tenant in common with the plaintiff, and that Gilbert's possession was for the plaintiff as well as for himself, and that Gilbert could not acquire title by adverse possession against the plaintiff except "by such acts as would amount to an assertion that he owed the whole of said lands, as against the plaintiff's right, and by such overt, public, hostile and notorious acts as would inform the plaintiff that he claimed the title as against him and that he had ousted the plaintiff of his right to the possession of his interests in the said lands;" that the possession of Gilbert, no matter how long continued, would not constitute an ouster of the plaintiff; that the deeds read in evidence can not be considered by the jury for the purpose of determining whether Gilbert acquired the plaintiff's interest in the land, but only for the purpose of ascertaining whether or not Gilbert "had been claiming title as against plaintiff under said deeds, claiming to have acquired his interest in the lands under said deeds;" that Gilbert must prove ten years' adverse continued possession as against plaintiff's title, and that he must show that he "did actually oust the plaintiff of his right and possession to said lands by asserting a hostile, open, adverse and notorious possession up against the plaintiff as would impart notice or give knowledge to plaintiff that defendant denied plaintiff's right to said lands or his title to same;" that as a cotenant, the defendant had a right to the possession of the land for himself and his cotenants, after his mother's death, "and he had a right to improve same when necessary to be done and to pay taxes on the same and to use the rents and profits of same for that purpose, and to charge up said improvements against the rents and profits of the land, and further instructs the jury that defendant, owning an interest in said lands, had a right to mortgage his said interests when he deemed necessary, but such acts of themselves done by

defendant does not constitute an ouster of plaintiff's right;'' that in determining the issues in the case, the jury can consider all the facts and circumstances given in evidence; that ''silence on the part of the plaintiff and acquiescence by the plaintiff in Gilbert Musgrove holding said lands in possession for the time he has and making no demand for possession or for any accounting for rents, profits or negligence on plaintiff's part in claiming said lands, or bringing suit for same will not estop him from claiming said lands, nor will such acts on plaintiff's part amount to an ouster of his right to possession of his interests in said lands.'' Being so instructed, the jury found for the plaintiff, judgment was entered accordingly, and defendants appealed.

## I.

This case is a fair sample of the consequences that flowed from the unfortunate, and I think erroneous, decision of this court in Skouten v. Wood, 57 Mo. 380, wherein it was held that under the homestead law of 1865 (Chapter 111, G. S. 1865) the homestead passed at the death of the husband to his widow and her heirs in fee subject to the right of his children to occupy it with the widow or her heirs, during their minority. As heretofore pointed out in Keene v. Wyatt, 160 Mo. l. c. 11, the learned judge who wrote the opinion in that case recorded a protest against such a construction of the statute, but felt bound to so construe it, because our homestead statute was taken from Vermont, and the courts of that State so construed their statute. The construction so placed upon the law was so objectionable to our people that at the next session, 1875, the General Assembly changed the statute so that the fee in the homestead should pass at the death of the husband to his heirs, subject to the right of occupancy in the widow for life and in his children until the youngest child attained majority.

The husband in this case died in 1873. The widow

and all the children, as also the bar of the State generally, supposed at that time that the fee passed to his heirs subject to the homestead rights of the widow. Skouten v. Wood was decided in August, 1874. But the rule there laid down does not seem to have been known to the parties or even to the circuit court, for in 1879, the widow filed a suit for a partition of the land against his heirs, and this property was set apart to her as a homestead. The widow and the children evidently believed at that time, and in 1880, that the fee was in the children, and the life estate in the widow, for she solicited Gilbert to buy the interests of his sisters in the land, and he did so, and went to live with his mother on the land and continued so to do until her death in 1883. The heirs evidently thought they owned the fee, and in 1887 when Gilbert purchased the interest of his brother William E., in the land, he supposed he owned a four-fifths interest therein, that is, the whole with the exception of the one-fifth owned by his said brother.

Under the rule laid down in Skouten v. Wood, however, they were all mistaken, and upon the death of the husband, the fee passed to the widow and her heirs, subject to the right of occupancy in the children. Mrs. Mary F. Hendricks, plaintiff's mother, died before her mother did, so that she never had and never acquired any interest in the fee, but at the death of the widow, the plaintiff inherited a one-fifth interest in the land in the right of his mother. If Mrs Hendricks had been a *femme sole* and if the deed had been properly drawn and acknowledged, there can be no question that her warranty deed would have passed her after-acquired interest to Gilbert, because the description in the deed is comprehensive enough to cover it [Bogy v. Shoab, 13 Mo. 365; Rector v. Waugh, 17 Mo. 13; Gibson v. Chouteau's Heirs, 39 Mo. l. c. 566; Railroad v. Railroad, 108 Mo. 298; Railroad v. Smith, 170 Mo. l. c. 331; G. S. 1865, chap. 108, sec. 3, p. 442.] But whilst the deed was a general warranty deed, it purported to be

the deed of John J. Hendricks and his wife, Mary F. Hendricks, and it was acknowledged by Mrs. Hendricks only as wife, she relinquishing her dower in the land, and not by her as the owner of the land.  The deed, therefore, was ineffectual to convey the interest of Mrs. Hendricks then existing or thereafter acquired, in the land.  [Nalle v. Clemens, 18 Mo. 486.]  In addition to this the rule in this State is that the doctrine of after-acquired property does not apply to a married woman's deed (at any rate if it was made prior to 1889 when the Married Woman's Act was passed), but that without regard to the form of the deed only whatever interest she had at the date of the deed passes.  [Brawford v. Wolfe, 103 Mo. l. c. 397; Ford v. Unity Church Society, 120 Mo. l. c. 509.]

The plaintiff, therefore, acquired a right to an undivided one-fifth interest in the land by descent cast at the death of his grandmother, and the defendants have no right to the land unless they have acquired title by limitation.  The general rule of law is that the possession of one tenant in common is the possession of all the tenants in common, the possession being said to be *"pour me et pour tout."*  [Long v. McDow, 87 Mo. l. c. 203.]  In order for one tenant in common to acquire title by limitation against another tenant in common, he must do some act towards his cotenant that will amount to a disseizin or a repudiation or denial of the rights of his cotenant and such as will show an intention to hold adversely to his cotenant and such act must be totally irreconcilable with a recognition of the rights of his cotenant.  [Long v. McDow, supra, and cas. cit.]  It is not essential however, that it be shown that such acts were brought to the notice of the cotenant.  [Boyce v. Railroad, 168 Mo. l. c. 593.]

The defendants contend that upon the case made the court should have sustained their demurrer to the evidence.  The plaintiff claims that the case was prop-

erly submitted to the jury. If there had been any con-
flict in the evidence as to the character, extent or manner
of the defendant's possession, it would have been a
proper case for the jury.     But there is absolutely no
conflict in the evidence. The facts are all undisputed.
There was, therefore, no fact for the jury to find. Noth-
ing remained to be done but to apply the law to the
conceded facts. The court did this in the instructions
given to the jury, and the facts being conceded there
was nothing for the jury to do but to return a verdict
for the plaintiff under the instructions given them. The
instructions given the jury in effect declared as a matter
of law that under the facts of the case the possession
of the defendants was not hostile or adverse to the
plaintiff, and did not create a title by limitation in the
defendant. The instructions given were tantamount to
a peremptory direction to find for the plaintiff, for they
practically declared that none of the acts of the defend-
ant amounted to an ouster of the plaintiff or afforded
any basis for title by adverse possession.

For instance, the facts are that after Gilbert ac-
quired, as he supposed, all the right of his brother and
sisters and after his mother's death he put up a new
house and a new barn and put other improvements on
the land of the total value of some three thousand dol-
lars. Before he acquired his brother's interest in 1887,
he mortgaged his interest in the land and described that
interest as a four-fifth's interest. After he acquired his
brother's interest he mortgaged the land and described
it as the whole. These deeds were duly recorded. For
over fourteen years before this suit was brought, he
remained in the open, notorious, exclusive, continuous
possession of the land, claiming it at all times as his
against the world, and honestly believing it to be his.
He improved it, mortgaged it, enjoyed the rents, issues
and profits, and paid the taxes on it. These are clear,
cogent and convincing evidences of intention to claim
title to it. They, are not mere verbal assertions of

ownership, such as were declared insufficient in Warfield
v. Lindell, 30 Mo. 1. c. 282.    They are the most open and
solemn acts that can be done to evidence a claim of
ownership, unless it be to absolutely sell the land or to
put up a sign on the place giving notice of such a claim.

The trial court dealt with the uncontradicted evi-
dence as to the improvements, as if they had been only
such as were necessary to be done, and as if they had
been paid for out of the rents and profits, whereas the
fact is that the premises were shown to be of the value
of $1,500 when assigned to the widow, and the new
house, barn and other improvements cost about $3,000.
The  trial  court  treated  the  mortgages  as  mort-
gages of only whatever interest he had in the land,
whereas the second mortgage to Fugate in December,
1887, described Gilbert as the owner of the whole estate.
The plaintiff claims that the deed from Gilbert to Bart-
lett in 1896 was the first act that in law amounted
to an ouster or denial of the plaintiff's right.    But in
this, the plaintiff is in error, for the deed of trust to
Fugate in 1887 described Gilbert as the owner of the
whole estate and purported to cover the whole estate,
and this deed was recorded and, therefore, imparted
notice to the whole world, the plaintiff included.    From
the date of the recording of that deed of trust, there-
fore, adverse possession of the defendant under the
statute of limitations clearly began to run.    Plaintiff was
born October 13, 1875.    He attained his majority there-
fore on October 13, 1896.    This suit was begun July 5,
1901.    The defendant had, therefore, been in the open,
notorious, continuous, uninterrupted adverse posses-
sion for over ten years next preceding the institution of
this suit, and of that ten years, more than three years
thereof was after the plaintiff attained his majority.
The claim of the plaintiff is, therefore, barred by limita-
tion.    [Ogle v. Hignet, 161 Mo. 1. c. 51.]    And the de-
fendant has acquired title by limitation.    The circuit
court should have sustained the demurrer to the evi-

dence.  Its judgment is erroneous and is reversed, and as no good purpose could be subserved by a retrial of the case, it will not be remanded.

All concur.