EDGAR C. JOHNSON et al., Appellants, v. FRANK CALVERT.

In Banc, July 14, 1914.

1. **CONVEYANCE:** Estate Tail. A deed to Mary and "the heirs of Thomas" did not create an estate tail which sections 2872 and 2874, Revised Statutes 1909, converted into a life estate in Mary with remainder in her bodily heirs, although "the heirs of Thomas" are the bodily heirs of Mary.

   *Held,* by WALKER, J., with whom GRAVES and FARIS, JJ., concur, that, in creating an estate tail, it is necessary to employ, not only words of inheritance, but words of procreation, such as words limiting the inheritance to the heirs of the body of the first taker.

2. ———: Construction: Deeds and Wills. In this State the rules for construing deeds and wills are the same.

3. ———: ———: Intent. The intent of the grantors, rather than technical rules of law, is to govern in construing a deed. Their intent is the pole star of construction.

4. ———: ———: Written and Printed Words. Where there is a conflict between written and printed words in a deed, the written words must be given effect, even when to do so is to disregard or place a different meaning upon the printed words.

5. ———: ———: ———: Grant to Mary and Heirs of Thomas: Heirs of Living Person: Cotenants. The deed named "Mary E. Johnson, wife of Thomas Johnson" as "party of the second part," and then granted "unto the said party of the second part and the heirs of the said Thomas Johnson and assigns forever" certain lands, the words "and the heirs of the said Thomas Johnson" being written, and the others printed, and appearing three times in said instrument. The said Thomas and Mary were husband and wife, both were living and had living children, and Thomas was a son of the grantors, and they as sole grantors conveyed the land to defendant.

Johnson v. Calvert.

*Held,* by BROWN, J., with whom LAMM, C. J., concurs, that the words "and the heirs of the said Thomas" cannot be rejected as surplusage or held void for uncertainty, on the theory that "no one can be an heir of the living," but they should be given a meaning in harmony with the evident intent of the grantors; and there being no other words indicating an intention to limit Mary's estate to one for life or to create an estate in remainder in the heirs of Thomas, the word "heirs" is to be understood as "children," and the deed should be construed as conveying a vested estate to Mary and the children of Thomas, as tenants in common, and hence a deed by Mary and Thomas conveyed only the aliquot part of Mary, leaving the title to the balance in his children living at the time the deed was made, but not including in the class children born after the deed was made.

*Held,* by WALKER, J., with whom GRAVES and FARIS, JJ., concur, that, to create an estate of freehold or inheritance, to commence in the future, it is necessary that the right to the future estate conveyed vest in the grantee upon the execution and delivery of the deed; that a living person can have no heirs, since an heir is "one on whom the law casts an estate upon the death of an ancestor," and therefore that part of the deed which undertook to convey the land to "the heirs of Thomas," who was then living, is void for uncertainty; that therefore Mary and the heirs of Thomas were not tenants in common; neither was Mary's estate limited to a life estate, for if no estate vested in the heirs of Thomas, a fee was created in Mary, and there are no words of limitation express or implied; and, therefore, a deed executed by Mary and Thomas conveyed the entire title, since she was vested with the entire estate in fee.

6. ————: ————: Common Meaning of Heirs.

*Held,* by BROWN, J., with whom LAMM, C. J., concurs, that the word "heirs" used in a deed which bears on its face evidence that it was drawn by a layman, should be held to mean "children," since in this country most owners of real estate are parents of children, and the mind of the layman, in speaking of "heirs" of a landowner, intuitively turns to his children.

*Held,* by WALKER, J., with whom GRAVES and FARIS, JJ., concur, that the word "heirs" is not to be construed to mean "children" except when it is necessary to carry out the clear intention of the grantor; and where an estate in fee has been created, it will not be cut down or limited by a subsequent clause, unless words of limitation are as clear and decisive as the principal language which effects the conveyance.

7. ——— : ———: **Omission of Word Heirs.** The omission of the word "heirs" after the named grantee does not cut down such grantee's interest to a life estate, nor is its use any longer necessary to create a fee simple estate absolute. That common-law rule has been abolished by statute, Sec. 2870, R. S. 1909.

8. **LIMITATIONS: Cotenants: Deed to Entire Tract by One.** A deed executed by one cotenant and her husband conveying the entire tract as if she were the sole owner, and the recording of that deed and the taking of possession thereunder by the grantee sets the Statute of Limitations to running as against the other cotenants, and ten consecutive years of actual possession by such grantee or his assigns after the other cotenants reach legal age vests the title to the whole in the last grantee, although such cotenants were at the time the deed was made minor children of the grantors.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*Frank B. Ellis* and *John A. Connett* for appellants.

(1) The purpose of all construction is to arrive at the intention of the parties to the instrument, and such intention, when ascertained from a consideration of the language used in the whole instrument and the circumstances surrounding the parties at the time the instrument was executed, must govern, unless such intention be repugnant to some positive rule of law. Mere technical words or technical rules of construction must, in all instances, give way to this prime rule of construction of deeds. Long v. Timms, 107 Mo. 519; Hunter v. Patterson, 142 Mo. 318; Bean v. Kenmuir, 86 Mo. 671; Aldridge v. Aldridge, 202 Mo. 572; Utter v. Sidman, 170 Mo. 294; Speed v. Terminal R. Co., 163 Mo. 124. (2) The fact that the usual words for creating an estate in fee simple which appear in the printed form of the deed were erased and other words interlined is very material in ascertaining the intention of the grantor and determining the effect to be given to

the deed.  Davidson v. Manson, 146 Mo. 618; Williamson v. Brown, 195 Mo. 329; Hunter v. Patterson, 142 Mo. 318; Depaige v. Douglas, 234 Mo. 88.  It cannot be reasonably contended ,in view of the erasures and interlineations in the deed in this case, that it created an estate in fee simple in Mary Johnson, the named grantee, without doing violence to the evident intention of the grantor.  (3)  A construction which renders all parts of the deed operative should be adopted if possible.  Linville v. Greer, 165 Mo. 397; Fanning v. Doan, 128 Mo. 329; 2 Devlin on Deeds (1 Ed.), sec. 848; Bean v. Kenmuir, 86 Mo. 671; Armor v. Frey, 226 Mo. 646.  If it is necessary to do so in order to carry out the intention of the parties, words may be supplied, transposed or changed.  Briant v. Garrison, 150 Mo. 668; Howell v. Sherwood, 242 Mo. 537.  (4) The written rather than printed part of a deed governs in the construction of the instrument.  DePaige v. Douglass, 234 Mo. 88; Davidson v. Manson, 146 Mo. 618; Williamson v. Brown, 195 Mo. 329.  (5)  It is not necessary that the estate be expressly limited by the use of the technical words ''for life,'' or other similar words in order to create an estate for life, either by conveyance or devise.  If it appears to be the intention of the grantor or testator that the deed or will should create such an estate, the failure to use the stereotype phrase is of no consequence.  Kinney v. Matthews, 69 Mo. 520; Cross v. Hoch, 149 Mo. 343.  (6)  In Missouri the rule for construction of deeds and wills is the same; namely, to ascertain and give effect to the intention of the grantor or testator. Briant v. Garrison, 150 Mo. 668; Aldridge v. Aldridge, 202 Mo. 572; Long v. Timms, 107 Mo. 519.  (7) If the deed from Robert Johnson to Mary Johnson and the heirs of Thomas Johnson offered in evidence is considered as vesting a present estate by tenancy in common in Mary Johnson and her children as suggested by counsel for defendants it must necessarily be held that the

three children born subsequent to the execution of the deed are excluded from any interest thereunder. Kinney v. Matthews, 69 Mo. 526; Tygard v. Hartwell, 204 Mo. 206. This is so clearly contrary to the intention of the grantor that we believe it is unworthy of serious consideration. Our own Supreme Court and the courts of other States have held that such a deed creates a life estate in the grantees named and a remainder in fee simple in all of his children whether born before or after the execution of the deed. Kinney v. Matthews, 69 Mo. 525; Hubbird v. Goin, 137 Fed. 822. (8) As has been suggested by our Supreme Court, the natural course for a grantor to pursue in case he wishes to grant such an estate is to name the living children as grantees together with their parent. Tygard v. Hartwell, 204 Mo. 206; Rines v. Mansfield, 96 Mo. 399. (9) While many of the authorities hold that a conveyance of an estate in present to the heirs of a living person is void, it is clear that there may be a valid conveyance or devise to any person for life with remainder to the heirs of another person who is living, the remainder thus created being contingent until such time as the remaindermen are definitely ascertained by the death of their ancestor, when it immediately becomes vested. Preston v. Brant, 96 Mo. 559; Tiedeman on Real Property (2 Ed.), sec. 411; 24 Am. & Eng. Ency. Law (2 Ed.), 397. (10) After we have gleaned the general principles of law from the cases, each case must stand on its own facts. Aldridge v. Aldridge, 202 Mo. 573; Fanning v. Doan, 128 Mo. 328. (11) If a deed cannot operate exactly as intended but can operate in another mode which will carry out the purpose and intent of the grantor, it will be so construed. 2 Devlin on Deeds (1 Ed.), sec. 837; Fanning v. Doan, 128 Mo. 329. (12) If the Robert Johnson deed be construed as vesting a life estate in Mary E. Johnson with remainder to the children of Thomas Johnson, the remainder created would be to the chil-

dren as a class, and would at once vest in the living children subject to open and let in after-born children. Tindall v. Tindall, 167 Mo. 218.

*W. S. Herndon* for respondent.

(1) The deed from Robert Johnson and wife conveyed the fee to the grantee, Mary E. Johnson. R. S. 1909, sec. 2870; Tygard v. Hartwell, 204 Mo. 200; Gannon v. Albright, 183 Mo. 238; Ewing v. Shannahan, 113 Mo. 188; Rothwell v. Jamison, 147 Mo. 601. (2) The deed did not create a life estate in Mary E. Johnson, with remainder to the heirs of Thomas Johnson. Yocum v. Siler, 160 Mo. 282; Gannon v. Albright, 183 Mo. 238; Gannon v. Pauk, 200 Mo. 75. (3) A conveyance to the heirs of a living person is void, because no one is in existence to whom an estate can pass. Arthur v. Weston, 22 Mo. 382; Boone v. Moore, 14 Mo. 420; Hall v. Leonard, 1 Pick. (Mass.) 27; Morris v. Stephens, 46 Pa. 200; Green v. Sutton, 50 Mo. 193. (4) The deed did not create a life estate in Mary E. Johnson, with remainder to the children of Thomas Johnson, born both before and after the execution of the deed. Tygard v. Hartwell, 204 Mo. 200. (5) The deed did not create an estate tail in Mary E. Johnson, which the statute would convert into a life estate in the first taker, and a remainder in the heirs of her body by Thomas Johnson. Tygard v. Hartwell, 204 Mo. 200; 1 Washburn, Real Property (5 Ed.), sec. 22; 11 Am. & Eng. Ency. Law (2 Ed.), p. 371; 2 Blackstone Com., p. 115. (6) An estate tail will not be created by implication and inference, unless the implication is necessary and the inference an inexorable one. Gannon v. Pauk, 200 Mo. 94. (7) Conveyances are never construed so as to make a possibility of reverter. If Mary E. Johnson had died prior to the death of her husband, Thomas Johnson, he could have had no heirs, general or special, to take. And if Mrs.

Johnson had only a life estate, the land would revert. Courts do not adopt such a construction unless there is an unequivocal grant of a life estate only to the first taker. Green v. Sutton, 50 Mo. 193; Sec. 2870, R. S. 1909. (8) Where a deed or other written instrument conveys a fee, this estate cannot be cut down by subsequent ambiguous words following in the same instrument. Yocum v. Siler, 162 Mo. 282; Gannon v. Albright, 183 Mo. 238; Gannon v. Pauk, 200 Mo. 75; Sec. 579, R. S. 1909; Roberts v. Crume, 173 Mo. 580; Roth v. Rauschenbusch, 173 Mo. 593; Underwood v. Cave, 176 Mo. 12; Armor v. Frey, 226 Mo. 646; Sevier v. Woodson, 205 Mo. 214; Small v. Field, 102 Mo. 127. (9) The intention of the grantor in a deed or other conveyance must be gathered from the four corners of the instrument, and it must be construed according to its legal effect. Utter v. Sidman, 170 Mo. 204.

BROWN, J.—Plaintiffs sue in ejectment for twenty acres of real estate in Clinton county. The cause was tried by the court sitting as a jury, and a judgment entered for defendant, from which plaintiffs appeal.

Both parties claim under a deed hereinafter set out in full, a construction of which forms the most important issue in this case. The defendant also claims title through the ten-year Statute of Limitation.

On October 9, 1865, one Robert Johnson of Clinton county owned the real estate which forms the subject-matter of this action. Said Robert Johnson at that time had a son named Thomas Johnson. The latter had intermarried with one Mary E. Johnson, of which union five children were born and then living. On the date first named Robert Johnson and wife executed the following warranty deed:

"This Deed, made and entered into this ninth day of October, A. D. 1865, by and between Robert Johnson and Clarissa Johnson, his wife, of the county of

Clinton, in the State of Missouri, parties of the first part, and Mary E. Johnson, wife of Thomas Johnson of the county of Clinton, in the State of Missouri, party of the second part, Witnesseth: That the said parties of the first part, for and in consideration of the sum of four hundred dollars, to them in hand paid, by the said party of the second part, the receipt whereof is hereby confessed, do by these presents Give, Grant, Bargain and Sell unto the said party of the second part *and the heirs of the said Thomas Johnson* and assigns forever, the following described real estate, lying and being in the county of Clinton and State of Missouri to-wit: [Description omitted.]

"To Have And To Hold the same, with all the privileges and appurtenances thereto belonging or in anywise appertaining, unto him, the said party of the second part *and to the heirs of the said Thomas Johnson* and assigns forever; the said parties of the first part, for themselves, heirs, executors and administrators, do covenant and agree, that they will warrant and forever defend the title to the said real estate, and every part thereof, unto him, the said party of the second part *and the heirs of the said Thomas Johnson* heirs and assigns, against the lawful claim or claims of all persons whatsoever, claiming or to claim the same or any part thereof."

The words italicized are written with pen and are interlineations into a printed form of warranty deed.

There is a controversy about whether the consideration recited in this deed was actually paid; and also another controversy relating to the reasons which moved Robert Johnson and his wife to execute the deed, but as the instrument is valid, whether the alleged consideration was paid, or whether the deed was a gift (the right of no creditor being involved), we do not think that the consideration upon which the instrument was based is a necessary factor in this case.

On June 16, 1881, Mary E. Johnson and her husband Thomas Johnson made to one Robert L. Scearce a warranty deed purporting to convey the whole title to the land in controversy. This deed was promptly placed of record. Defendant claims title under this deed to Scearce; and if it passed a fee simple title to the whole tract, then the judgment is for the right party.

Thomas Johnson, the ancestor of plaintiffs, died on April 16, 1884, and his wife Mary E. died in April, 1909.

The descendants of Mary E. Johnson, who are likewise descendants of Robert Johnson, are the plaintiffs in this action. One of said plaintiffs, Mrs. Carter, was born subsequent to the execution of the deed by Robert Johnson and wife now in judgment.

Plaintiffs contend that the deed hereinbefore set out conveyed only a life estate to their mother Mary E. Johnson with remainder to the children of Thomas Johnson, and that the life estate of said Mary E. Johnson having terminated at her death in 1909 the judgment should have been for plaintiffs. On the other hand, defendant asserts that, as a living person cannot have *heirs*, the interlining into the deed of the words "to the heirs of Thomas Johnson" can have no force and should be rejected, thus leaving the whole title in said Mary E. Johnson; and that said title passed by the deed from Mary E. Johnson and Thomas Johnson her husband to Scearce, executed June 1, 1881, and therefore is now fully vested in defendant.

These contentions seek a construction of the deed before quoted from Robert Johnson and wife to Mary E. Johnson "and the heirs of Thomas Johnson."

The evidence in regard to adverse possession will be noted in our opinion.

## OPINION.

I. One theory of appellants is that the deed from Robert Johnson and wife conveyed an estate tail, which, by sections 2872 and 2874, Revised Statutes 1909, was converted into a life estate in said Mary E. Johnson with remainder to her bodily heirs, who are the plaintiffs in this case.

**Estate Tail.**

It is. true that the plaintiffs are the bodily heirs of Mary E. Johnson, but they are not so described in the deed. In fact, they are not referred to as the heirs of Mary E. Johnson, neither do we find any language in the deed which designates them as remaindermen. Therefore, this point must be ruled against plaintiffs.

II. The main contention of plaintiffs is that Thomas Johnson could not have had any heirs in 1865, because he was then living; therefore the words "to the heirs of Thomas Johnson," written three times into the deed, are vague, meaningless and should be rejected as surplusage and given no effect. In support of this insistence the following cases are cited: Arthur v. Weston, 22 Mo. 1. c. 382; Boone v. Moore, 14 Mo. 420; Hall v. Leonard, 1 Pick. (Mass.) 27; Morris v. Stephens, 46 Pa. St. 200; Green v. Sutton, 50 Mo. 186; and Desloge v. Tucker, 196 Mo. 1. c. 599.

**Deed to Heirs of Living Person.**

In Arthur v. Weston, 22 Mo. 378, it was held that a deed to W. W. Phelps & Co. only operated to pass title to Phelps, and not to other members of the firm. In Boone v. Moore, 14 Mo. 420, it is held that a conveyance to the "heirs" of a man then dead was valid. The deed construed in Green v. Sutton, 50 Mo. 186, is so entirely unlike the one now in judgment that what was said in that case is not authority here. The Tucker case (196 Mo. 1. c. 599) contains a definition of the word "heirs" as used in section 152, Revised Statutes 1909.

I am not able to see how any of the Missouri cases cited furnish any very solid support for appellants' position. These cases are quite old and seem to have been decided when technical common-law rules for construing deeds were in more favor than at the present time. The same may be said of the Massachusetts and Pennsylvania cases above cited. In the Massachusetts case (1 Pick. 27, 1. c. 31) the announcement is made that the rule in that State for construing wills is not the same as for construing deeds. While with us the rule is the same. [Long v. Timms, 107 Mo. 512, 1. c. 519.] In Morris v. Stephens, 46 Pa. St. 200, a deed to the heirs of a living man was held void for uncertainty.

In the light of the circumstances under which the deed in judgment was executed, we are not justified in holding that the words "to the heirs of Thomas Johnson," inserted in said deed three times, may be rejected as surplusage, or as void for uncertainty. When the word "heirs" is penned by a seasoned disciple of Blackstone we may construe it according to its full legal and technical import. However, in this case the deed to be construed bears on its face almost conclusive evidence that it was drawn by a layman. The ordinary printed form of warranty deed was used, and the words "his heirs" are erased therefrom, and the words "to the heirs of Thomas Johnson" are written in three times with a pen.

There are two rules of law well accepted in our State which render it impossible for us to ignore the words "to the heirs of Thomas Johnson" in this conveyance.

First, the intent of the grantors, rather than technical rules of law, must be considered in construing the deed. The authorities upon this point are numerous, as well as harmonious: Long v. Timms, 107 Mo. 512, 1. c. 519; Hunter v. Patterson, 142 Mo. 310, 1. c. 318; Bean v. Kenmuir, 86 Mo. 1. c. 671; Aldridge v.

Aldridge, 202 Mo. 565, l. c. 572; Utter v. Sidman, 170 Mo. 284, l. c. 294; and Speed v. Terminal Ry. Co., 163 Mo. 111, l. c. 124-126. Second, the words "to the heirs of Thomas Johnson" are interlined into this deed with a pen, the body of the deed being on a printed form; and the rule is that, where there is a conflict between the written and printed words of an instrument, the written words must be given effect, even when to do so is to disregard or place a different color upon the words or clauses which are printed. [Davidson v. Manson, 146 Mo. l. c. 618; DePaige v. Douglas, 234 Mo. 78.]

The intent of the grantors (who are dead), like the intent of a testator, is the pole star which must lead us to a correct construction. of the deed in judgment. We may not treat as meaningless what the grantors have caused to be inserted three times into the deed. If the word "heirs" is void or meaningless when used in reference to a living person, then it is more compatible with the principles of modern construction to place upon said word (heirs) a definition or construction in harmony with the evident intent of the parties who executed the deed. There is not a word in the deed in judgment which points to either a mere life estate in Mary E. Johnson or to a mere remainder in the heirs of Thomas Johnson. Whatever title this deed conveyed was passed *in praesenti* to the grantees therein. It is permissible to supply or omit words when the context of an instrument calls for such construction. [Grace v. Perry, 197 Mo. l. c. 559, and cases there cited.] I am, however, convinced that it is never safe to intermeddle with the language used by a grantor or testator to a greater extent than is indispensable to give effect to his obvious intent.

It appears to me that even a layman would know that in order to limit the title of the grantee Mary E. Johnson to a life estate some word or words would be necessary to explain that intent; also that some word or words would be necessary to constitute the other

grantees remaindermen instead of tenants in common. I am not aware of any rule whereby the first party named as grantee in a deed takes any greater title than grantees subsequently named in such instrument, not even where, as here, the latter grantees are designated by referring to them as a class. The only two cases where deeds very much like the one in judgment have been construed in Missouri are Fanning v. Doan, 128 Mo. 323, and Franklin v. Cunningham, 187 Mo. 184, l. c. 195. The deeds construed in those cases designated as grantees a woman by name and then generally the heirs of her deceased husband (as a class), and such deeds were held to pass to the woman named and heirs of her husband the title as tenants in common. Those cases are not precisely like the one at bar, because the husbands whose heirs were designated as grantees in those deeds were dead, while here the husband Thomas Johnson was living. If we should read the words ''heirs of Thomas Johnson'' to mean ''children of Thomas Johnson,'' then the cases last before-noted furnish complete support for holding that it was the intention of Robert Johnson and wife to make their daughter-in-law Mary E. Johnson and the children of their son Thomas Johnson tenants in common—a construction which is in accord with reason and experience. The five children of Thomas and Mary E. Johnson were infants in 1865, when the deed was made, the oldest of those children being then only nine years old, and I am unable to see any reason why their grandfather should not have made them tenants in common with their mother if he so desired.

It would certainly do less violence to the language of grantors to read said word ''heirs'' as and for the word *children*, than to manufacture and insert into the deed enough words to cut down Mary E. Johnson's title to a mere life estate. We are, therefore, of the opinion that the written word ''heirs'' as used in the deed under consideration should be read *children*,

thereby making the wife Mary E. Johnson and the children of Thomas Johnson tenants in common.

In this country where nearly every man who owns real estate is the father of children, few laymen are familiar with the rules of law whereby lands may pass to collateral or ancestral heirs. If we speak of "heirs" of a living landowner the mind of the layman intuitively turns to the children of such landowner.

Such a construction is not new or strained, but is supported by respectable authorities. In 2 Devlin on Real Estate (3 Ed.), sec. 846d, p. 1556, it is said:

"Where land was conveyed to 'the heirs' of a person living at the time, the court was of the opinion that the word should not be taken in its technical sense, but should be construed as meaning children so that the deed took immediate effect. If a deed grants land to A, and the heirs of B by A, his wife, the title vests immediately in A and the children then living of A and B, as the word 'heirs' is to be taken as meaning the living children of the persons mentioned in the deed, rather than an indefinite line of descendants."

To the same effect are the cases of Heath v. Hewitt, 127 N. Y. 166; Grimes v. Orrand, 2 Heisk. (Tenn.) 298; Tinder v. Tinder, 131 Ind. 381; and Tharp v. Yarbrough, 79 Ga. 382. The Grimes case is especially in point here, because the briefs of the attorneys show that the losing party in that case unavailingly relied upon many of the cases which plaintiffs have cited as tending to sustain the position that a deed to the heirs of a living person is void. We therefore hold that the deed in judgment conveyed the land in controversy to Mary E. Johnson and the five children of Thomas Johnson who were living at the time that deed was executed as tenants in common.

III.  One of the plaintiffs, Mrs. Carter, was born after the deed now in judgment was executed.  We do not think she took any title under or through

**Unborn Children.**

that deed, because the law favors vested rather than contingent estates. [Tharp v. Yarbrough, 79 Ga. 382.]  There is nothing in this deed which tends to show a design to convey to unborn children.  At any event, Mrs. Carter as well as the other plaintiffs seem to be barred by adverse possession, as will hereafter appear.

IV.  A further contention made by plaintiffs is that, as the words "his heirs" appearing in the printed form of the deed used were erased and the words "heirs of Thomas Johnson" interlined in lieu of. the words thus erased, this shows an intention on

**Erasure of Words "His Heirs."**

the part of the grantors to cut down the title to Mary E. Johnson to a life estate. This contention cannot be sustained.  Under the common law it seems to have been necessary that the words "heirs" should follow the name of the grantee in a deed to create a fee simple estate, but that rule is abolished by section 2870, Revised Statutes 1909.  This has been the statutory rule since 1855. [R. S. 1855, p. 355.  See also O'Day v. Meadows, 194 Mo. l. c. 621.]

As the words "his heirs" were not necessary in this deed to pass a fee simple estate to Mary E. Johnson as one of the tenants in common, it would certainly be a strained construction to hold that the mere act of striking out these unnecessary words would revive the common law and change the meaning of the deed. [Hunter v. Patterson, 142 Mo. 310.]

V.  The defendant introduced evidence showing that he and his grantors claiming through and under

**Limitations.**

the warranty deed made by Mary E. Johnson and Thomas Johnson to Robert L. Scearce on June 6, 1881, have been in the actual, open,

adverse, exclusive and continuous possession of the land in controversy for a period of more than sixteen years, cultivating same as a farm. This evidence was admissible under their general denial. [Stocker v. Green, 94 Mo. 280; Coleman v. Drane, 116 Mo. 387, l. c. 391.] Plaintiffs made no effort to rebut or discredit this evidence in any way—they tried the case on the theory that Mary E. Johnson held only a life estate, and, therefore, the Statutes of Limitation would not begin to run against them as remaindermen, until her death in 1909. We find that the plaintiffs were mistaken in that view.

Mary E. Johnson was a tenant in common with plaintiffs, and the Statutes of Limitation began to run against all of them as soon as Mary E. Johnson and her husband executed the warranty deed to Scearce and the latter placed the same of record and took possession. [Hendricks v. Musgrove, 183 Mo. 300, l. c. 311; 38 Cyc. 34.] The children of Thomas Johnson all attained their majority more than ten years before this suit was instituted; consequently their rights are barred by the adverse possession of defendant and his grantors. If coverture or any other matter could have been interposed to toll the statute as to part of plaintiffs no effort was made to do so, and we will decide the case on the issues presented below. The judgment is for the right party and will be affirmed. It is so ordered.

*Lamm, C. J.,* concurs; *Graves, Walker* and *Faris, JJ.,* concur in result for reasons stated in opinion filed by *Walker, J.; Bond* and *Woodson, JJ.,* dissent.

WALKER, J.—I concur in the conclusion reached in the majority opinion that the judgment of the trial court should be affirmed, but not alone on the ground of the bar of the Statute of Limitations.

I admit that generally all the words of a convey-
ance should, if possible, be so construed as to give full
effect to the intention of the grantor as therein ex-
pressed; but this rule should not be invoked at the
expense of the context of the instrument and in viola-
tion of the reasonable rules of interpretation.

The vexed words here are "and the heirs of Thom-
as Johnson." These words are susceptible of three
constructions; first, that they create tenancies in com-
mon in Mary E. Johnson and the heirs of Thomas John-
son; or, second, that they create a life estate in Mary
E. Johnson with remainder over in the said heirs; or,
third, that they are inoperative and hence a fee is
created in Mary E. Johnson.

It is well established that to create an estate of
freehold or inheritance, to commence in the future, it
is necessary that the right to the future estate con-
veyed vest in the grantee upon the execution and de-
livery of the deed. We so held in Aldridge v. Aldridge,
202 Mo. 565, in construing the statute (Sec. 2876, R. S.
1909) which provides that "an estate of freehold or of
inheritance may be made to commence in future by
deed, in like manner as by will."

At the time of the execution and delivery of the
deed in question, Thomas Johnson was living, conse-
quently he could have no heirs, and no estate could,
therefore, vest in them. If this conclusion is not cor-
rect as an elementary proposition, then the uniformly
accepted definition of the word "heir" as "one on
whom the law casts an estate upon the death of the
ancestor" (Desloge v. Tucker, 196 Mo. l. c. 599) must
go for naught.

There is nothing in the court's rulings in Buxton
v. Kroeger, 219 Mo. 224, or in O'Day v. Meadows, 194
Mo. 588, or in Christ v. Kuehne, 172 Mo. 118, which mil-
itates against the conclusion reached here as to the
necessity in the creation of an estate of its vesting *in
praesenti* upon the execution and delivery of the deed.

In each of these cases the facts clearly show that the estates there in controversy vested upon the execution of the instruments construed. Whatever may have been said, therefore, especially in O'Day v. Meadows, supra, in construing section 2876, Revised Statutes 1909, as to the validity of instruments creating estates of freehold in the future without the creation at the same time and in the same instruments of a particular estate to support them, can have no application here.

Under the rule above announced as to the vesting of estates *in praesenti* there is no lack of authority that where a deed is attempted to be made to the heirs of one living the same is void for uncertainty. [Booker v. Tarwater, 138 Ind. 385, 395; Hall v. Leonard, 18 Mass. 27; Morris v. Stephens, 46 Pa. St. 200.] In the Booker case, supra, the grantees named were. "Francis Carrico's heirs;" in the Hall case, supra, they were "the heirs of Ephraim Leonard," and in the Morris case, supra, "the heirs of my son Andrew." In each of these cases the father of the heirs referred to was living at the time of the execution of the deed which was held in consequence of said fact to be void. No case has been found to support a grant to a man's heirs, he being living at the time of the grant. [Hall v. Leonard, 1 Pick. 27.]

In the light of these well reasoned authorities, it cannot be held that tenancies in common are created in Mary E. Johnson and the heirs of Thomas Johnson.

A tenancy in common not having been created by the deed, can its language be so construed, in harmony with well established principles, as to create a life estate in Mary E. Johnson, with remainder over in the heirs referred to? In approaching this question it seems to necessarily follow from the reasoning employed in the rulings as to the first inquiry that its solution likewise solves the question as to the nonexistence of a life estate. *Sic,* if no estate vested in

the heirs of Thomas Johnson, then, from the very terms of the deed, which are general and unconditional, a fee was created in Mary E. [Green v. Sutton, 50 Mo. 186, 192.] But let us view it from another vantage. Ordinarily a life estate is created by words of express limitation, and such an estate will not be assumed unless there are such words or their equivalents.

In deeds, as in devises, express words are not necessary to create a life estate, but the purpose so to do must clearly appear from the entire instrument. [Cross v. Hoch, 149 Mo. 325; Lewis v. Pitman, 101 Mo. 281.] The construction of the deed in question is not hindered by the employment of different terms or forms of expression, for in the granting, holding and warranting clauses we find the same language. Taking the deed as a whole, therefore, we have simply to determine whether the language used is sufficient to create a life estate with remainders over. That the words used do not expressly or by clear implication, create a life estate in Mary E. Johnson is evident, and as much is admitted by appellants who nevertheless contend in effect that the terms employed create an estate tail which, under our statute (Sec. 2872, R. S. 1909) is converted into a life estate in Mary E. Johnson with remainder in fee to the heirs of Thomas Johnson. Briefly, an estate tail is an estate of inheritance, descending not to heirs generally, but to the heirs of the grantee's body. In the creation of this estate, therefore, it is necessary to employ words of inheritance as well as of procreation. [Tygard v. Hartwell, 204 Mo. 200, 207; Summet v. City Rea. & Bro. Co., 208 Mo. 501.]

Our reports are replete with much learning as to the origin, development and destruction by statute of this character of estate, commencing with the case of Farrar v. Christy, 24 Mo. l. c. 468, down through many cases, not necessary to be cited here, to Tygard v. Hartwell, supra, and Gray v. Ward, 234 Mo. 291, 297.

An examination of the terms creating the estate in each of these discloses that words of inheritance, as well as procreation, have uniformly been used. No estate for life with remainder over having been created by the language used in the deed in question, and the necessary words being absent to create an estate tail, and the said deed containing all the essentials to the creation of a fee simple title, there is no room for any conclusion other than that said deed created an estate in fee in Mary E. Johnson and that the words "and the heirs of Thomas Johnson" are for the various reasons stated, ineffectual, void for uncertainty (Hall v. Leonard, supra; 2 Devlin on Deeds (3 Ed.), sec. 846c and notes) and, therefore, meaningless.

Notwithstanding what seems to us to be a well sustained conclusion as to the interpretation of the deed in question, it is held in the majority opinion that the word "heirs" should be construed as "children," whereby the grantees become tenants in common.

The language of the deed is not such that the word "heirs" can be properly construed as meaning "children" so as to authorize such a construction of the deed as it is claimed would follow the use of the last mentioned word.

While in Rines v. Mansfield, 96 Mo. 394, the court ruled conversely in regard to the special words referred to, and held that the word "children" in the granting clause of a deed meant "heirs," the reason stated for this holding was that it was "a construction forced by the habendum clause." [Tygard v. Hartwell, 204 Mo. l. c. 206.] From this it will be seen that it was only due to the language of the deed in that particular case that the substituted use of one of these words for the other was there authorized.

Parenthetically, it is pertinent to state in this connection that in its general holding the Rines case

is an authority for the construction we have placed upon the deed in the instant case. To illustrate, in the latter case the deed being to "Mary E. Johnson and the heirs of Thomas Johnson," we hold that the grantor named took the fee, while in the Rines case the granting clause being to "M., her children and assigns" and the habendum and warranty clauses to "M., her heirs and assigns," it was held that "M." took the fee and not as tenant in common with her children.

In Roberts v. Crume, 173 Mo. 572, the testator devised his real estate to "his daughter and to her heirs," and the court held that the word "heirs" in that connection could not be construed to mean "children," but was used in the same sense as if the gift had been made by deed and that the will devised the fee and not a life estate to the daughter. We quote the rulings in these cases that the reasons for the general rule to be deduced therefrom may appear; it is, in effect, as follows: that the word "heirs" will not be construed to mean "children" except when it is necessary to carry out the *clear* intention of the testator, and where an estate in fee has been created, as we contend was done in the instant case, it will not be cut down or limited by a subsequent clause, unless the words of limitation are as clear and decisive as the principal language which effects the conveyance of the real estate.

Taking into consideration, therefore, the unequivocal language of the deed under consideration, and the utter absence of any words of limitation, which, considering the circumstances, can have any binding effect, we are of the opinion that in this case the word "heirs" cannot properly be construed to mean "children." This conclusion is in accord with the reasoning of this court in Tygard v. Hartwell, supra.

From all of which it follows that the judgment of the trial court should be affirmed. *Graves* and *Faris, JJ.*, concur.