# ROSE E. SAUCER et al., Appellants, v. MARIA KREMER.

## Division One, March 5, 1923.

1. **APPELLATE PRACTICE**: Action at Law: Reviewing Evidence. A suit to quiet title wherein the pleadings present no equitable issues, but only issues at law, is an action at law, and the appellate court cannot review the facts, but is bound by the findings of the trial court sitting as a jury, if such findings are supported by substantial evidence.

2. ———: ———: **Declaration of Law.** In an action at law to try and determine title to real estate, tried by the court sitting as a jury, a peremptory declaration of law to find for plaintiff is properly refused if there is substantial evidence that the title is in defendant. The rule is the same as it would be were the trial before a jury.

3. **LIMITATIONS**: Title by Adverse Possession. Independent of the record title, actual adverse possession of real estate under color of title for the period prescribed by the Statute of Limitations confers title.

4. ———: **Notice of Adverse Claim to Cotenants.** It is not necessary that actual notice of an adverse holding and disseizin by one cotenant be brought home to the others. Such notice may be constructive, and will be presumed when the adverse claim and occupancy of one are open, notorious, exclusive and inconsistent with the existence of title in others out of possession. Where defendant and her predecessors in title for more than sixty years have claimed the whole property by warranty deeds duly recorded, and for more than twenty years, by actual occupancy and cultivation and by building a house and stable and other improvements, have been in exclusive possession adversely to the whole world, recognizing no claim of the plaintiffs of whom she never heard and who claim a half interest under a devise more than ninety years old, there was such open and notorious claim of exclusive ownership as amounted to notice to plaintiffs of her adverse claim and their complete ouster.

5. ———: ———: **By Quit Claim Deed Through Common Source.** The actual occupant of land, although he and others claim record title under a common source, may plead and prove title by adverse possession to the whole property. Where a Spanish grant was confirmed in 1812 by Act of Congress to plaintiffs' ancestor, and after his death two of his four devisees in 1851 conveyed

by quit-claim deed, and thereafter their grantee and a long line of his successors, by warranty deeds, conveyed the whole property, and the last grantee has been in exclusive and notorious adverse possession for more than twenty years, the fact that her record title originated in a quit-claim deed from two of said devisees and that she and the claimants under the other two claim under a common source, does not preclude her from setting up title by adverse possession to the whole property.

Appeal from St. Louis City Circuit Court.—*Hon. Charles B. Davis,* Judge.

AFFIRMED.

*Harmon J. Bliss* and *Walter F. Schelp* for appellants.

(1) The Act of June 13, 1812, *ex proprio vigore,* vested title in all persons claiming under its provisions. Vasseur v. Benton, 1 Mo. 212; Tyler v. Wells, 2 Mo. App. 521; Gurno v. Janis, 6 Mo. 330; Page v. Scheibel, 11 Mo. 167; City of Carondelet v. City of St. Louis, 25 Mo. 448, 459; Milburn v. Harvey, 28 Mo. 592; Fine v. St. Louis Public Schools, 30 Mo. 166, 176; St. Louis v. Schoenthaler, 40 Mo. 272; Baird v. St. Louis Hospital, 116 Mo. 426-7; Guitard v. Stoddard, 16 How. 510; Savignac v. Garrison, 18 How. 136. (2) Possession in law of land means the assertion of the right of ownership over the property by improving it or using it for any purpose. Possession may be established by enclosure, cultivation or by any use that clearly indicates the appropriation and actual use of a person claiming to hold it. Latta v. Clifford, 47 Fed. 614. (3) The possession of a person once in occupancy of a tract of land is presumed to have continued indefinitely until it is affirmatively shown that such possession ceased. A fact once proved to exist, the law will presume its continuance. Janssen v. Stone, 60 Mo. App. 402; Cargile v. Wood, 63 Mo. 501. (4) Where the evidence shows that the parties plaintiff and defendant have a common source of title, then irregularities in conveyances prior to the common source become weak-

nesses common to both litigants and hence immaterial. Ebersole v. Rankin, 102 Mo. 488; Harrison Machine Works v. Bowers, 200 Mo. 219, 235; Grandy v. Casey, 93 Mo. 595; Smith v. Lindsey, 89 Mo. 76. (5) Where several heirs take land by devise or inheritance, these heirs are tenants in common of such land and where some of such heirs convey their interest to strangers to the title such grantees are likewise tenants in common with the heirs not conveying. The grantees of such strangers to the title and descendants of the non-conveying heirs are also tenants in common. 1 Washburn on Real Property (3 Ed.) pp. 526, 563. (6) The distinctive quality of tenants in common is unity of possession. Their possession being common, and each having a right to occupy, not only will such possession, though held by one person, be presumed not to be adverse to his co-tenant, but it is, ordinarily, held to be for the latter's benefit, so far as preserving his title thereto, the possession of one tenant in common being deemed to be the possession of all. 1 Washburn on Real Property (3 Ed.) p. 566; Long v. McDow, 87 Mo. 197; Benoist v. Rothschild, 145 Mo. 399, 408; Golden v. Tyer, 180 Mo. 196, 201; Coberly v. Coberly, 189 Mo. 1; Chapman v. Kullman, 191 Mo. 237; Collier v. Gault, 234 Mo. 457; Robidoux v. Cassileggi, 10 Mo. App. 516; Hill v. Allen, 12 Mo. App. 580. (7) Where a party is in possession of land as one of several tenants in common, nothing short of an open and explicit disavowal and disclaimer of a holding under the common title, and an assertion of title in himself brought home to the owner, will establish adverse possession. There must be an actual or constructive ouster by the tenant in possession before he can be considered as holding adversely to other tenants in common. The presumption is that the possession is friendly. Johnston v. Prewitt, 32 Mo. 558; Budd v. Collins, 69 Mo. 139; Estes v. Long, 71 Mo. 609; Long v. McDow, 87 Mo. 202; Gorden v. Eans, 97 Mo. 603; Meier v. Meier, 105 Mo. 432; Benoist v. Rothschild, 145 Mo. 399, 408; Mo. Lumber & Mining Co. v. Jewell, 200 Mo. 707, 715; Hecke-

scher v. Cooper, 203 Mo. 278, 293; McCune v. Good-willie, 204 Mo. 306, 339. (8) In general to constitute an effective adverse possession there must be: First, the ouster of the real owner followed by an actual possession by the adverse claimant; and, second, an intention on the part of the latter to so oust the owner and possess for himself. Meier v. Meier, 105 Mo. 432; Swope v. Ward, 185 Mo. 234. If the possession in its inception was friendly, then it could not be converted into one of hostility by mere intention. Some notice or act indicative of an intent of disseizin is necessary. Hamilton v. Boggess, 63 Mo. 249; Budd v. Collins, 69 Mo. 137; Estes v. Long, 71 Mo. 609; Spencer v. O'Neill, 100 Mo. 49; Comstock v. Eastwood, 168 Mo. 48; Combs v. Goldsworthy, 109 Mo. 160. (9) To convert a friendly possession, as in cases of tenants in common, into an adverse possession, the intention to make the change must be distinctly made known to the true owner. There must be the intention to oust followed by some overt act. Tyler on Eject. p. 876; Warfield v. Lindell, 38 Mo. 581; Wommack v. Whitmore, 58 Mo. 448; Budd v. Collins, 69 Mo. 129; Wilkerson v. Thompson, 82 Mo. 317; Gordon v. Eans, 97 Mo. 587; Meier v. Meier, 105 Mo. 411; Golden v. Tyer, 180 Mo. 196, 201; Hynds v. Hynds, 253 Mo. 200; McClung v. Ross, 5 Wheat. 116. (10) Whatever a deed of a tenant in common may profess to dispose of, the grantee, as between himself and his co-tenants, can obtain no greater interest than his grantor had the right to enjoy. The recording of such deed does not, consequently, constitute an act of ouster. Benoist v. Rothschild, 145 Mo. 399, 408; Edwards v. Bishop, 4 N. Y. 61; Purcell v. Wilson, 4 Gratt. 16; Caldwell v. Neely, 81 N. C. 114.

*A. G. Eberle* and *Wm. McNamee* for respondent.

(1) Defendant has been in the actual, open, adverse, hostile, exclusive and continuous possession of the lands in suit under color of title since the 27th day of May, 1906, for a period of more than ten years prior

to the institution of this suit, and such possession not only bars plaintiffs' recovery, even if they had had title, but vests perfect title in defendant. Sec. 1305, R. S. 1919; Franklin v. Cunningham, 187 Mo. 184, 196; Kirton v. Bull, 168 Mo. 622; Scannell v. American Soda Fountain Co., 161 Mo. 606; Johnson v. Calvert, 260 Mo. 442, 457; Real Estate Co. v. Megaree, 280 Mo. 41, 55. (2) Conceding for the sake of argument that, on the 27th day of May, 1906, the plaintiffs had title to an undivided one-half of the lands in suit, and that defendant by her purchase of the land from Fisher became a cotenant with plaintiffs, nevertheless her possession from that time on was exercised, manifested and accompanied by such outward acts of exclusive ownership of such an unequivocal character, overt and notorious, and of such a nature as by their own import served to impart information and give notice to the co-tenants that an adverse possession and an actual disseizin was intended to be asserted against them. Warfield v. Lindell, 38 Mo. 561; Hart v. Eldred, 264 Mo. 148, 151; Allen v. Morris, 244 Mo. 357; Nickey v. Leader, 235 Mo. 30, 43; Hendrix v. Musgrove, 183 Mo. 300, 309; Peck v. Lockridge, 97 Mo. 491; Hudson v. Hudson, 139 Mo. 236; La Peyre v. Paul, 47 Mo. 586; Campbell v. Laclede Gas L. Co., 84 Mo. 352, 374. (3) The placing of her own deed on record and the execution and recording of the deed of trust to Fisher on the 29th day of May, 1906, was an open, solemn and public declaration of her claim to exclusive ownership, and gave notice to the world of her claim, and her possession from that time on was adverse and hostile, and ripened into title on May 30, 1916. Hendrix v. Musgrove, 183 Mo. 300, 310; Johnson v. Calvert, 260 Mo. 442, 457; Hart v. Eldred, 264 Mo. 148, 151; Campbell v. Laclede Gas Co., 84 Mo. 352, 375. (4) And it is not necessary that such notice should be brought home to the ousted co-tenant. McClanahan v. McClanahan, 258 Mo. 579, 596; Hendrix v. Musgrove, 183 Mo. 300, 309; Boyce v. Missouri Pacific Ry. Co., 168 Mo. 583, 593; Meisenheimer v. Amos, 221 Mo. 362, 371;

Saucier v. Kremer.

Allen v. Morris, 244 Mo. 357, 364; Dunlap v. Griffith, 146 Mo. 283, 294; Whittaker v. Whittaker, 157 Mo. 342, 356; Peck v. Lockridge, 97 Mo. 549, 560; Campbell v. Laclede G. L. Co., 84 Mo. 352, 374; La Peyre v. Paul, 47 Mo. 586, 591; Warfield v. Lindell, 38 Mo. 561, 585; Warfield v. Lindell, 30 Mo. 272, 282. (5) Appellants not having been in possession of land in dispute for thirty consecutive years prior to August 1, 1918, and not having paid any taxes thereon for all that period of time, and their further failure to bring any action for the recovery of said land within one year from said date, August 1, 1918, forever barred them from recovery and *ipso facto* vested title in the possession, this respondent. Sec. 1884, R. S. 1909; Laster v. Cunningham Land Co., 213 S. W. 91; Campbell v. Greer, 209 Mo. 199; Gram v. Peterman, 200 Mo. 295. (6) Where evidence shows that parties were in possession of land, but does not disclose or identify the parties, the law presumes that the record owner was in possession. Brannock v. McHenry, 252 Mo. 1; Weir v. Lumber Co., 186 Mo. 388.

SMALL, C.—Suit to quiet title to about fourteen acres of land in the city of St. Louis.

Plaintiffs set out in detail their chain of title in their petition. It, in substance, alleges, that on the sixth day of December, 1796, the Government of Spain granted to Gabriel Constant a concession of two hundred arpents of land on the north bank of the River des Peres, and that the land sued for was included in this grant. That said concession was afterwards duly recorded in the United States Land Office and confirmed by the Act of Congress of June 13, 1812. That said Gabriel Constant died intestate and left as his only heir, Gabriel Constant, Jr., who died about October 10, 1831, leaving a last will and testament by which he devised the land to his four daughters, Mary Louise, Constance, Lucile and Julie Constant, to be divided equally between them. That plaintiffs claimed to own said property as the heirs, dev-

isees and grantees of said four daughters of Gabriel Constant, Jr.

The petition further states that the defendant, Maria Kremer, claims title adversely to plaintiffs in said land by virtue of *mesne* conveyances from said Marie Louise and Constance, but plaintiffs have not sufficient knowledge to state the nature and extent of said claim.

The prayer is in conventional form for the court to define the estate of the parties and by its decree to adjudge the respective titles of plaintiffs and defendant; and if the court finds the plaintiffs are the sole owners, that a decree be entered forever barring the defendant from setting up any title or claim to said land.

Defendant's answer admits she claims title and avers she is the owner in fee of the land described in the petition, and denies each and every other allegation in the petition. Further answering, the answer alleges that by Act of Congress of June 13, 1812, the land in question was confirmed by the Government of the United States to the town of Carondelet in the State of Missouri, and that through *mesne* conveyances she acquired and now owns whatever estate said town of Carondelet had in said land. That on or about the 17th of November, 1851, Marie Louise Franklin (*nee* Constant) and Constance Schults (*nee* Constant), as the legal representatives of Gabriel Constant, Sr., for themselves and their sisters, Julie Constant and Lucile Constant LeBlond, on or about the 17th of November, 1851, effected a compromise with the city of Carondelet, whereby they, in consideration of receiving a conveyance from said city of a certain parcel of land, conveyed by quitclaim deed whatever interest they might have had in said land mentioned in the petition to said city of Carondelet. That said Julie Constant and Lucile Constant LeBlond accepted the fruits of said compromise with the city, and that they and their heirs and all persons claiming under them are estopped from asserting title to said property. That through a long series of conveyances the defendant, by warranty deed from one S. J. Fisher, recorded on May 29, 1906, acquired

whatever title said city of Carondelet previously had in said property, and that she is still the owner of said property.

The answer further sets up adverse possession under the ten-year, twenty-four-year and thirty-year Statute of Limitations. It concludes with a prayer for the court to try, determine and settle the respective rights and titles of the parties, and if the court finds the defendant is the sole owner, to enter a decree barring the plaintiffs and all persons claiming under them.

The reply specifically denies the allegations of the answer, and alleges that at the time said compromise was made said Julie Constant and Lucile Constant were minors, and their sisters Marie Louise Franklin and Constance Schults were not authorized to convey said land for said minors and their deed to the city of Carondelet in no way affected the rights of said minors. But that said city of Carondelet, by ordinance authorizing said compromise, recognized the ownership of the heirs and devisees of Gabriel Constant, Jr., to said land, and the validity of the concession of December 6, 1796, to Gabriel Constant, Sr., by the Government of Spain. That on account of such recognition the city of Carondelet and the defendant by claiming under it, became estopped to claim any title in said land adverse to plaintiffs. That if defendant acquired title through the city of Carondelet, defendant became and now is a tenant-in-common with plaintiffs in said land. The reply then denies all the allegations of the answer relating to the title claimed by the defendant by adverse possession under the Statute of Limitation, and concludes with a prayer for the court to try and determine the respective rights and titles of the parties.

Much testimony with reference to the validity of the Spanish grant and confirmation thereof to plaintiffs' ancestor, Gabriel Constant, was introduced in evidence. But, in the view we take of the case, it is not necessary to consider this evidence, because, as we find the record under the judgment of the circuit court appealed from,

the plaintiffs are barred by the Statute of Limitation, assuming said Spanish grant was valid.

At the outset of the trial, the plaintiffs admitted that the half interest of Marie Louise Franklin and Constance Schults in said land was well vested in the defendant, and that plaintiffs only claimed collectively an undivided half of said land.

Plaintiffs' evidence tended to prove that they were the heirs and devisees and grantees of the devisees of said Lucile and Julie Constant. The compromise ordinance of the city of Carondelet, put in evidence by plaintiffs, recited that it was enacted for the purpose of compromising with the legal representatives of Gabriel Constant, Sr., deceased, to-wit: Marie Louise Franklin and Constance Schults, who claimed the land in question by virtue of said concession of two-hundred arpents dated December 6, 1796, to Gabriel Constant. That said two-hundred arpents had all been leased out and disposed of by the town of Carondelet to divers persons, and said legal representatives are willing by way of compromise to take in lieu of said tract a certain other tract of land, describing it, which was authorized by said ordinance.

Plaintiffs further offered evidence tending to prove that Lucile Constant (Mrs. LeBlond-Maxon) lived in a house on the property about forty-five years before the trial. That she then moved away, renting the house to a negro family. The house was still there in 1890, but was vacant. Mrs. Maxon told a witness, while she lived on the property, that she built the house to hold her heirship, because it was her property. Mrs. Maxon lived in the city of St. Louis after leaving the property, and died ten years before this suit was tried, at the age of 95 years.

Defendant's evidence consisted of a regular chain of conveyances, starting with a quitclaim deed dated November 17, 1851, from Marie Louise Franklin and husband and Constance Schults and husband, to the city of Carondelet; then a quitclaim deed dated August 17, 1857, from the city of Carondelet to Daniel D. Page; then con-

veyances as follows, Daniel D. Page, by warranty deed, dated August 4, 1857, to Samuel T. Glover et al.; afterwards, a decree in partition allotted the property to James L. Glover; March 22, 1892, James L. Glover, warranty deed to Thomas Dunn; August 2d, 1894, warranty deed by Thomas Dunn to Charles A. Bucholz; on same day Bucholz conveyed property in fee to Thomas Dunn, trustee, to secure certain notes; on September 11th, 1897, trustee sold property at foreclosure and made trustee's deed to Philip Key, who on same day made deed of trust to secure certain note, and on November 7t `, 1900, deed of trust was foreclosed and property purchased by James M. Graves at trustee's sale, who obtained trustee's deed therefor; on `December 20 `, 1900, James M. Graves, by general warranty deed, conveyed to Sylvester J. Fisher; on May 17. `, 1906, Sylvester J. Fisher and wife, by general warranty deed, purported to convey the entire fee to said property to defendant, Maria Kremer. All of the deeds in the defendant's chain of title were properly acknowledged and duly recorded shortly after they were dated, and purported to convey the entire property. Said defendant, Maria Kremer, executed a deed of trust, dated May 2, 1906, and recorded May 29, 1906, to Mr. Schotts, trustee, in which she purported to convey the fee to the entire property in trust to secure the payment of certain notes given by her, and she made another deed of trust conveying the fee, dated September 30, 1908, and duly recorded, to secure the payment of certain other notes.

Defendant, Maria Kremer, testified: That when she purchased the property on May 17` `, 1906, from Sylvester J. Fisher and wife, the property was in cultivation, but had no improvements upon it. That she improved the property, by grading, putting up buildings, and cleaning out the woods; built a stable, sheds, put in water. That she cultivated the whole fourteen acres as a truck farm, right along from the time she bought it up to the time of the trial. During all that time, she paid taxes and was in possession and no one made any claim to the property but herself. None of the plaintiffs ever claimed to

own any interest in the property, that she knew of, until she was served with summons in this suit. She was living on the property with her five sons, four of whom were working the land at the time of the trial. Her husband died seven years before she bought the property. There are no fences on the north, south or west sides of the property; never have been. When she went there in 1906, there was not any house anywhere around there. She built a frame house a story-and-a-half high on the property in 1908. The house cost her $1850. She built a stable which cost her $300. Put in water last July. Made no other improvements. House and stable are in center of property. The boys improved the land so we could work every foot of it. The land is all cultivated and always has been. Do not know any of the parties who brought this suit; never heard of them or their claims until this suit was brought. Went to live on this property two years after she got deed from Fisher. Cultivated the whole property from the time she bought it in 1906. Had the title examined when she bought it.

Other evidence on the part of the defendant tended to show that special tax-bills were made out against the property in the names of the different persons through whom the defendant claims from 1885 to 1906, commencing with the name of Samuel T. Glover in 1885 and ending with the name of Sylvester J. Fisher in 1906, and from that time the tax-bills were made out in the name of the defendant, Maria Kremer. The taxes, the record shows, were all paid from 1885 to date of trial, but it does not show who paid them except that they were paid by defendant after she purchased.

Defendants evidence further tended to show that a colored family lived there a year or two after 1878, and that no people by the name of LeBlond (Mrs. Maxon) lived on the property from 1880 to 1897. That there was no house on the property after 1900, except the house built by the defendant; that the house occupied by the colored family disappeared about 1880; that it was not

on the property in suit at all, but was on property south of it. That the land was cultivated for a number of years before defendant purchased it, by the parties under whom she claimed title; that she paid $6,000 for the property, and, besides other improvements, paid $1000 to drain it, and $500 to put in water.

The inventory of the estate of Julie Constant was introduced in evidence, and showed this property was not inventoried as belonging to her estate.

At the close of all the testimony, the plaintiffs offered the following declaration of law: "The court declares the law to be that under the law and the evidence in this cause, plaintiffs are collectively vested with and entitled to an undivided one-half interest in the land described in plaintiffs' petition." Which declaration of law the court refused. No other declarations or instructions were asked by either party nor given by the court.

The court took the cause under advisement and at the December term, 1920, rendered judgment in favor of defendant and against the plaintiffs on all the issues joined and dismissed the bill of plaintiffs.

After unsuccessfully moving for a new trial, the plaintiffs appealed to this court.

I.   The pleadings in this case do not present any equitable issues, but simply issues at law. Therefore, this court cannot review the facts, as in equity cases, but is bound by the finding and verdict of the court below, sitting as a jury, the same as in any other action purely at law. And the finding of the lower court on the facts cannot be disturbed by us, if such finding has substantial evidence to support it. [First Natl. Bank v. Wilson, 222 S. W. l. c. 383, and cases cited; Sawyer v. French, 289 Mo. 374.]

**Action at Law: Reviewing Evidence.**

II.   The declaration of law asked by the plaintiffs and refused by the court was a peremptory instruction to find for the plaintiffs as to one undivided half of the property. But, if there was any substantial evidence of

title in fee to the whole property in the defendant, such declaration was properly refused, the same as if the trial had been before a jury. [Jaicks Co. v. Schoellkopf, 220 S. W. (Mo.) 486.]

III. We hold that, independently and without reference to the validity of the concession claimed to have been made to the ancient ancestor of the plaintiffs, Gabriel Constant, by the Spanish Government, December 6, 1796, the plaintiffs have no title to the property in question, because there was substantial, indeed, overwhelming evidence to show that if defendant did not have a perfect record title, she had a perfect title by adverse possession. Therefore, plaintiffs' peremptory instruction was properly refused.

*Limitations.*

IV. The proposition of appellants' learned counsel that plaintiffs and defendant were tenants in common, if said Spanish concession of 1796 was valid, and therefore adverse possession did not run against the plaintiffs for the reason that no notice of defendant's adverse possession was brought home to the plaintiffs or their predecessors in title, is untenable. Defendant and a long line of her predecessors in title claimed title to the whole property by warranty deeds duly recorded for more than sixty years. For fully twenty years or more next before the suit was brought, by the most open and notorious acts of ownership she and they were in possession of the property adversely to all the world, claiming in good faith to own the whole property, recognizing no interest therein in any other person, and especially not in any of the plaintiffs or any persons under whom they claim, of whom or whose claim the defendant had never heard before suit was brought.

*Cotenants: Notice of Adverse Claim.*

It is not necessary that actual notice of an adverse holding and disseizin be brought home to co-tenants. Such notice may be constructive and will be presumed to have been brought home to them when the adverse oc-

cupancy and claim of title is so open, notorious, exclusive and inconsistent with the existence of any title in others, except the occupant, that the law will raise the inference of notice to co-tenants, if any there be out of possession.

In the case at bar, neither the defendant, nor her predecessors in title, from the warranty deed of Daniel D. Page to Samuel T. Glover et al., dated August 4, 1857, over sixty years before the suit was brought, ever recognized the co-tenancy of the plaintiffs or of any other persons, but claimed to own the whole property by virtue of their warranty deeds thereto, duly acknowledged and recorded. The undisputed evidence also shows that for more than ten years next before the suit was brought, the defendant and those under whom she claims, had open, notorious, adverse and exclusive possession under their claim or exclusive ownership and title to all the property in question. Not only the possession, but the claim of title by defendant started and continued, not in harmony with, but in hostility to plaintiffs' title. The facts and circumstances, which defendant's evidence tended to prove, were abundantly sufficient to charge plaintiffs and their predecessors in title with full notice of the adverse possession and claim of title by the defendant and her grantors, and to show title by reason thereof in the defendant. [Johnson v. Calvert, 260 Mo. 442; Hendricks v. Musgrove, 183 Mo. 310; Allen v. Morris, 244 Mo. 357; Hutson v. Hutson, 139 Mo. 229; Misenheimer v. Amos, 221 Mo. 362; Swope v. Ward, 185 Mo. 316; Warfield v. Lindell, 30 Mo. 272, 38 Mo. l. c. 584-5-6.]

And such is the general law. In 38 Cyc. 34, it is said: "An unauthorized or unratified sale or conveyance of the whole property or any specific part thereof by metes and bounds by one tenant in common, followed by entry by the grantee thereunder and his exclusive possession thereof, under adverse claim of title to the whole or some specific part by metes and bounds, amounts to an ouster of the other cotenants; and such a conveyance of the entire estate coupled with possession by the grantee and notice to the other cotenants, actual or presumed, or

open, hostile, exclusive, and notorious acts of ownership, constitutes adverse possession which may ripen into a valid title by prescription.''

We rule this point against the appellants.

V.  It is also suggested that, because defendant claimed title through the city of Carondelet, which acquired title to an undivided one-half of the property by a quitclaim deed made in 1851 by two of the four daughters of Gabriel Constant, Jr., to all of whom he had devised the property, and the plaintiffs claim title from his other two daughters, the plaintiffs and defendant claim through a common source of title and defendant cannot therefore set up title to the whole property by adverse possession. We cannot agree to this contention. It is allowable for the defendant, although she may claim record title under a common source, to also plead and prove title by adverse possession to the whole of the property. [Waddell v. Chapman, 292 Mo. 666, 238 S. W. 481, and cases cited.]

*Quit-Claim Deed.*

Finding no error in the judgment of the lower court, we affirm its judgment. Let it be so ordered. *Brown* and *Lindsay, CC.,* not sitting.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur.